No. 47,943

STATE OF KANSAS *ex rel.* KEITH SANBORN, District Attorney for the 18th Judicial District of Kansas, *Appellee,* v. F. KENT KALB, (substituted party for JAMES T. McDONALD), Secretary, Department of Revenue, State of Kansas, *Appellant.*

(543 P. 2d 872)

Opinion filed December 13, 1975.

*Donald R. Hoffman,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, and *George F. Waters,* assistant attorney general, were on the brief for the appellant.

*Keith Sanborn,* district attorney, argued the cause, and *Stephen M. Joseph,* assistant district attorney, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: The issue presented by this appeal is whether a class A private club (K. S. A. 1974 Supp. 41-2601 [*b*] [2]), which has a federal income tax exemption under section 501 (*c*) (7) of the internal revenue code of 1954, is eligible to receive a bingo license. A determination of the issue involves a construction of the recently enacted statute regulating the operation and conduct of games of "bingo" within the State of Kansas. (Senate Bill No. 116, L. 1975, ch. 491 [K. S. A. 1975 Supp. 79-4701, *et seq.*].)

Article 15, Section 3, of the Kansas Constitution prohibits all forms of lotteries and the sale of lottery tickets. At the general election held on November 5, 1974, an amendment was adopted and added to the constitution in the following form:

"Notwithstanding the provisions of section 3 of article 15 of the constitution of the state of Kansas the legislature may regulate, license and tax the operation or conduct of games of 'bingo,' as defined by law, by bona fide nonprofit religious, charitable, fraternal, educational and veterans organizations." (Kansas Constitution, 1974 Supp. Art. 15, § 3a.)

Pursuant to the authority granted by this amendment, the Kansas legislature enacted Senate Bill No. 116, effective April 1, 1975, providing for the licensing and regulation of bingo games conducted by "bona fide nonprofit religious, charitable, fraternal, educational and veterans' organizations." On March 31, 1975, in response to a request from the secretary of revenue, the attorney general issued an opinion stating that country clubs and class A clubs could be licensed to play bingo under a strict interpretation of the provisions of the act.

The secretary of revenue thereupon began accepting and processing applications for bingo licenses from class A clubs and country clubs. Of the license applications received from class A clubs and country clubs, three were from Sedgwick County: Lakeshore Club, Inc., Brookside Club, Inc., and Rolling Hills Country Club, Inc.

On April 24, 1975, the district attorney for the Eighteenth Judicial District, appellee herein, filed a petition seeking to permanently enjoin the secretary of revenue, appellant herein, from issuing bingo licenses to the aforementioned clubs, and to all other clubs similarly situated. After hearing the evidence and arguments of the parties, the district court found that the intent of the legislature was to exclude class A clubs, and by order enjoined the secretary of revenue from issuing bingo licenses to class A clubs organized and operated exclusively for pleasure, recreation and similar nonprofitable purposes, and to any and all other such class A clubs.

The resolution of the questions raised by appellee's action to enjoin the operation of games of bingo in class A clubs depends upon our construction of the applicable provisions of the newly adopted "Bingo Act," appearing as K. S. A. 1975 Supp. 79-4701, et seq. Under 79-4703, license to operate games of bingo within the state may be granted to:

"Any bona fide nonprofit religious, charitable, fraternal, educational or veterans' organization desiring to operate or conduct games of 'bingo' within the state of Kansas. . . ."

All three applicants herein, Lakeshore Club, Inc., Brookside Club, Inc., and Rolling Hills Country Club, Inc., applied for a license to conduct bingo on their premises, claiming they were bona fide nonprofit fraternal organizations within the meaning of 79-4703. A "fraternal organization" is defined by the act as:

". . . any organization within this state which exists for the common benefit, brotherhood, or other interests of its members and is authorized by its written constitution, charter, articles of incorporation or bylaws to engage in a fraternal, civic or service purpose within this state." ( K. S. A. 1975 Supp. 79-4701 [d].)

A "nonprofit organization" is defined in the same section of the act as:

". . . any organization which is exempt from taxation under paragraphs (4), (5), (6), (7) and (8) of subsection (c) of section 501 of the internal revenue code of 1954, as amended." (K. S. A. 1975 Supp. 79-4701 [g].)

Paragraphs four through eight of subsection (c) of section 501 of the internal revenue code of 1954 provide for a variety of "nonprofit organizations" which are exempt from federal income taxation:

"(4) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.

"(5) Labor, agricultural, or horticultural organizations.

"(6) Business leagues, chambers of commerce, real-estate boards, boards of trade, or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

"(7) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.

"(8) Fraternal beneficiary societies, orders, or associations—

"(A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and

"(B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents."

Each of the applicants herein applied for its respective license on the basis of its nonprofit status as an organization exempt from federal income taxation under 501 (c) (7) of the internal revenue code. Thus, it can be assumed that for federal income tax purposes the applicants were found to be "organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder."

In addition, each of the applicants herein had been issued a license under K. S. A. 41-2605 to operate as a class A club within

the state under the "Kansas liquor control act." A class A club is defined in K. S. A. 1974 Supp. 41-2601 (*b*) (2):

"A class A club shall be a premises owned or leased and operated by a corporation, partnership, business trust or association, for the exclusive use of the corporate stockholders, partners, trust beneficiaries or associates (hereinafter referred to as members), their families and invited and accompanied guests, and which is not operated for a profit other than such as would accrue to the entire membership. A corporation, partnership, business trust, or association not operated for a profit, for the purposes of the definition of a class A club shall only include such a corporation, partnership, business trust, or association which has been exempted from the payment of federal income taxes as provided by section 501 (*c*), (7) and (8), internal revenue code of 1954 or determined to be a bona fide nonprofit organization or association by the director of alcoholic beverage control."

The petition filed on behalf of the district attorney's office alleged that all three of the named applicants operated as class A clubs and qualified for the federal income tax exemption under 501 (*c*) (7) of the internal revenue code. Based on these facts, the petition asserted that as a "matter of law" the clubs were not bona fide fraternal organizations within the meaning of the bingo act since they were organized and operated exclusively for pleasure, recreation, and other similar nonprofitable purposes. The trial court was asked to permanently enjoin the secretary of revenue from issuing bingo licenses to the three named clubs and to all other organizations located in the Eighteenth Judicial District of Kansas which had been issued class A club licenses and which were organized and operated exclusively for pleasure, recreation, and other similar nonprofitable purposes within the meaning of 501 (*c*) (7) of the internal revenue code.

The reasoning behind appellee's argument to enjoin the playing of bingo at any class A club having a 501 (*c*) (7) exemption revolves around the characteristics of that exemption. Appellee argues that any club having such an exemption must necessarily be organized and operated exclusively for pleasure, recreation, and other similar nonprofitable purposes. This being true, the same organization cannot claim it is a fraternal organization under the bingo act. In appellee's view, the two purposes, fraternal and pleasure, are mutually exclusive. In other words, appellee contends an organization cannot be organized exclusively for pleasure and recreation on the one hand, and on the other hand be organized as a fraternal organization. Accordingly, appellee claims a class A club with a 501 (*c*) (7) exemption cannot be a "fraternal organiza-

tion." This reasoning would be applicable to all similarly situated class A clubs, and not just the three applicants in question.

After considering the various provisions of the bingo act in conjunction with the exemptions granted by 501 (c) of the ·internal revenue code, we are not persuaded by the logic of appellee's argument. Appellee's theory is based on the premise that we must look to the provisions of 501 (c) (7) for a definition of "fraternal organization." Reference to 501 (c) (7) in the bingo statute, however, is limited to a definition of a "nonprofit organization;" that is, an organization which has been granted an exemption from federal income taxation under 501 (c) (7) is a "nonprofit organization." Appellee applies language in the internal revenue code as a basis for denying applicants the status of fraternal. We do not believe this was the intent of the legislature. It is clear from the act that the classification of an organization under the federal tax exemption statute is intended only to be determinative of whether it is "nonprofit." Once that finding has been made, we are no longer concerned with the federal tax exemption classification and we proceed to our bingo statute to consider whether the organization qualifies as one of the designated organizations which may conduct games of bingo within the state.

The argument of the secretary of revenue in favor of issuing bingo licenses to the three named applicants and all other similarly situated clubs is basically as follows. The bingo statute requires that an organization which seeks to be licensed to conduct games of bingo must meet two tests. First, the organization must be "nonprofit" as defined by K. S. A. 1975 Supp. 79-4701 (g); and second, it must be either a religious, charitable, fraternal, educational or veterans' organization. It is undisputed that the clubs in question have been granted federal income tax exemptions under 501 (c) (7) of the internal revenue code of 1954, thus qualifying as "nonprofit organizations" within the meaning of 79-4701 (g).

As to the "fraternal" element, appellant notes that a qualifying organization must meet a two-pronged test: (1) It must exist for the common benefit, brotherhood, or other interests of its members, and (2) it must be authorized by its written constitution, charter, articles of incorporation or bylaws to engage in a fraternal, civic or service purpose. (K. S. A. 1975 Supp. 79-4701 [d].) Appellant argues the applicants herein satisfy the initial requirement of a fraternal organization in that they are organized for the common benefit of their members. This common benefit may take the form

of a quiet, private place to engage in the consumption of alcoholic beverages, or a convenient, economical place to play golf, tennis, handball, or other recreational activity. Whatever the particular activity involved, it is appellant's position that these organizations exist for the members' common benefit. We note that nothing in the record indicates whether the applicants have a written constitution, charter, articles of incorporation or bylaws, which authorizes them to engage in a fraternal, civic or service purpose. This requirement was not an issue in the trial court. Before an applicant can qualify for a bingo license, however, it must satisfy the secretary of revenue that it meets this requirement.

We recognize there is some logic in appellant's argument. On its face, the act permits the operation of bingo games by "fraternal organizations" existing for the common benefit of their members. Many class A clubs and other social organizations could qualify as existing for the common benefit of their members. Since there is no express requirement in the statute that the common benefit relate to brotherhood or some other worthy purpose, it would be possible to conclude that an organization existing solely for pleasure or recreational purposes could qualify as "fraternal" as long as it was organized for the common benefit of its members. Likewise, the second requirement in the statutory definition of "fraternal" could be read literally to require that a class A club or other organization need only have a statement in its written constitution, charter, articles of incorporation or bylaws to the effect that it was authorized to engage in fraternal, civic or service purposes and need not actually engage in such activities.

It is a fundamental rule of statutory construction that the legislative intent behind a statute be ascertained wherever possible, and the legislative intent governs its construction even though the literal meaning of the words used therein is not followed. ( *State, ex rel., v. City of Overland Park*, 215 Kan. 700, 527 P. 2d 1340; *In re Birdsong*, 216 Kan. 297, 532 P. 2d 1301.) Courts are not bound to an examination of the language alone, but may properly inquire into the causes which impel the statute's adoption, the objectives sought to be attained, the statute's historical background, and the effect the statute may have under the various constructions suggested. ( *State, ex rel., v. City of Overland Park*, supra.) It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious, and sensible if that can be done without doing violence to plain provisions therein contained. When the interpretation of a

section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be read according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law. ( *State v. Sumner*, 169 Kan. 516, 219 P. 2d 438. )

The history of the bingo act demonstrates that the legislature did not intend a broad construction be given to the definition of a fraternal organization. The constitutional amendment passed by the great majority of the electorate approved specifically the playing of bingo by certain specified organizations, one of which was a bona fide nonprofit fraternal organization. Prior to the bingo amendment, Article 15, Section 3, of the Kansas Constitution expressly prohibited the operation of all forms of lotteries and sale of lottery tickets in the state. In *State v. Nelson*, 210 Kan. 439, 502 P. 2d 841, we held unconstitutional a statute ( K. S. A. 21-4302) which attempted to legalize bingo. Since then, the electorate has accepted the constitutional amendment permitting the playing of bingo by certain designated organizations. The legislature cannot authorize the playing of bingo beyond the limits permitted by the constitution. Although the legislature included in the statute definitions of the various organizations which could conduct games of bingo, such definitions must be consistent with the common meaning attached to the terms by the electorate.

We are influenced by the fact the legislature used the words "bona fide" to modify each of the qualifying organizations. We agree with appellee that some significance should be attached to the use of these words. The term is typically used in a restrictive sense to mean genuine, actual, or real. ( Black's Law Dictionary, Revised Fourth Ed., p. 223; 11 C. J. S. Bona Fide, p. 387.) We believe it was the intent of the legislature to construe the word "fraternal" in a strict and limited sense rather than the broad meaning argued by appellant.

"Fraternal" is defined in Webster's Third New International Dictionary as:

". . . of, relating to, or involving brothers . . . of, relating to, or being a fraternity or confederation . . . of, relating to, or being one of many men's or sometimes women's clubs or associations usu. having secret rites, restricted membership, and religious, social, charitable, or professional purposes. . . ." (p. 903.)

The foregoing definition is supported in varying degrees by each of the following cases: *State ex rel. Leahy v. O'Rourke*, 115 Mont.

502, 146 P. 2d 168 (1944); *Woman's Club, &c., v. Little Falls Twp.,* 20 N. J. Misc. 278, 26 A. 2d 739 (1942); *Huffman v. Brotherhood of R. Trainmen,* 65 N. Dak. 446, 259 N. W. 663 (1935); *National Union v. Marlow,* 74 F. 775 (8th Cir. 1896); *Walker v. Commissioner of Insurance,* 103 Mich. 344, 61 N. W. 512 (1894).

In order for this litigation to be of value to those charged with the responsibility of issuing licenses to play bingo and to those charged with the duty of enforcing the laws of this state, we should declare with as much certainty as possible the intent of the legislature. After giving effect to the history of the legislation, the rules of statutory construction, and the commonly understood meaning of the words used in the act, we have reached the following conclusions. To qualify for a license to play bingo as a bona fide fraternal organization the applicant must show it is a "nonprofit organization" under 79-4701 (*g*) and that it is a "fraternal organization" under 79-4701 (*d*). In addition, we construe "bona fide . . . fraternal" to require an applicant to satisfy the issuing agency it is an organization with a representative form of government and either that (1) it operates under the lodge system with a ritualistic form of work; (2) it is organized to promote the payment of life, sickness, accident, or other insurance benefits to its members; or (3) it is organized to carry on some worthy civic or service purpose.

Appellee's action was originally brought to enjoin the three applicants, and all others similarly situated, from conducting games of bingo. As previously noted, appellee based its petition and argument on the theory that as a matter of law a class A club with a 501 (*c*) (7) exemption could not be a "fraternal organization" within the meaning of 79-4701 (*d*). We conclude the classification of organizations in 501 (*c*) (7) has no relation to the determination of whether an applicant is a "fraternal organization" for purposes of the bingo act, other than satisfying the requirement that a qualifying organization be "nonprofit." Accordingly, we hold the trial court erred in finding as a matter of law that a class A club with a 501 (*c*) (7) exemption could not be a bona fide fraternal organization. This requires us to reverse the trial court and dissolve the injunction. The trial court is directed to order the secretary of revenue to review the three applications and act thereon in accord with the guidelines announced in this opinion.

Reversed and remanded with directions.

FROMME, J., dissenting. I cannot agree the issue presented by this

appeal is encompassed in the opening paragraph of the opinion and covered in the syllabus.

The issue presented to the trial court was limited by the pleadings. The plaintiff alleged in the petition that the Lakeshore Club, the Brookside Club, and the Rolling Hills Country Club were not "bona fide nonprofit fraternal organizations." (Paragraphs 9, 11, and 13 of the petition.) These allegations were denied by the defendant. (Paragraph 2 of the answer.) Paragraphs 8, 10, and 12 of the petition state, among other things, that these three clubs were "organized and operated *exclusively* for pleasure, recreation, and other similar nonprofitable purposes." These allegations were admitted by the defendant. (Paragraph 1 of the answer.)

The journal entry of judgment entered by the court states the case was tried to the court, the plaintiff introduced evidence in support of the petition and the defendant introduced no evidence. The journal entry, when shorn of excess verbiage, states the court found that the issuance of bingo licenses is limited by the constitution and the bingo law to bona fide nonprofit religious, charitable, fraternal, education and veterans' organizations. The court further found that the three clubs named were social clubs, organized and operated *exclusively* for pleasure, recreation, and other similar nonprofitable purposes, and that they did not come within the definition of fraternal organizations found in the bingo law.

The injunction issued by the court was made applicable to the three named clubs "organized and operated *exclusively* for pleasure, recreation and similar non-profitable purposes, . . ." and to any and all other such class A liquor clubs situated in the 18th Judicial District of Kansas. This last portion of the injunction enjoining the issuance of bingo licenses to clubs holding class A liquor licenses is overbroad and foreign to any requirement or limitation in the law authorizing the issuance of bingo licenses.

Under the evidence introduced at the trial and the admissions of the defendant at the trial we have a finding by the court that these three clubs were not bona fide fraternal organizations as defined by the statute. (L. 1975, ch. 491 [1] [d].) The statutory definition reads:

"'Fraternal organization' means any organization within this state which exists for the common benefit, brotherhood, or other interests of its members and is authorized by its written constitution, charter, articles of incorporation or bylaws to engage in a fraternal, civic or service purpose within this state."

The evidence introduced by the plaintiff at trial is not set forth

in the record. The agreed statement of the parties appearing in the record includes no evidence. It includes a general statement that "the Court found that the intent of the legislature was to exclude class A private clubs and country clubs, and therefore issued the order of injunction from which defendant has appealed." This agreed general statement does not and cannot change the findings of the court set forth in the journal entry.

Therefore the issue presented to this court on appeal is limited. The trial court found the three clubs named and similar social clubs holding class A liquor club licenses (see K. S. A. 41-2601 *et seq.*), were not bona fide nonprofit fraternal organizations when such clubs were organized and operated *exclusively* for pleasure, recreation, and other similar nonprofitable purposes. The burden on appeal falls on the appellant to establish that these findings of the court are not supported by the evidence introduced below. The admissions of the defendant in the answer support the court's finding that these three clubs are social clubs. They are organized and operated *exclusively* for pleasure, recreation and other nonprofitable purposes and are not within the meaning and definition of a fraternal organization set forth in L. 1975, ch. 491, sec. 1 (*d*).

The authority to issue licenses to conduct bingo games is limited by section 2 of the act as follows:

"The power to regulate, license and tax the operation or conduct of games of 'bingo' by bona fide nonprofit religious, charitable, fraternal, educational and veterans' organizations is hereby vested exclusively in the state and shall be exercised as provided in this act." (L. 1975, ch. 491, sec. 2.)

The applications for licenses in this case were based upon claims of the three organizations that they were bona fide nonprofit fraternal organizations.

It is admitted these three clubs qualify as nonprofit organizations, so that requirement of the law is of no further concern. The only question below and on appeal is whether these three organizations qualify under the statute as bona fide fraternal organizations. The fact that these clubs hold a class A liquor license or that they may be referred to as country clubs is immaterial to the question of their qualifications to hold licenses to conduct bingo games. If they are bona fide fraternal organizations within the meaning of the bingo law they are entitled to such a license upon compliance with the other provisions of the act. If they are not—then no license should be issued and the injunction should stand. I find no limitation in the bingo law which prevents the issuance of a license to clubs hold-

ing a class A liquor license. There is no provision in the act which authorizes a club to receive a bingo license merely because it is licensed as a class A liquor club.

The designation, fraternal organization, carries with it a rather clear connotation in the minds of the citizens of this state. When the constitutional amendment was authorized by the people they had this connotation in mind. The legislators in implementing the constitutional provision intended to follow this constitutional provision and limited the issuance of licenses to fraternal organizations and other organizations of a specified nature, i. e. religious, charitable, educational and veteran.

The definition of a fraternal organization placed in the bingo law follows the connotation generally understood by the public as constituting a fraternal organization. It varies only slightly from the definition set forth in most dictionaries. The term is well known and connotes a brotherhood operating under a written constitution, rendering services for the personal benefits of that brotherhood and rendering civic services for the benefit of dues paying members or some segment of the public. Some of these better known fraternal organizations include, without limitation, the Free and Accepted Masons, the 32nd Degree Masons, the Knights of Columbus, the Knights Templar, the Benevolent and Protective Order of Elks, Independent Order of Odd Fellows, the Independent Order B'Nai B'rith, the Modern Woodmen of America, the Loyal Order of Moose, the Nobles of the Mystic Shrine, the Maccabees, together with other fraternal organizations not so well known in this state.

The bingo license law (L. 1975, ch. 491) provides in sec. 3 that no license shall be issued "in the case of fraternal and veterans' organizations which have not had during such entire five-year period [the period preceding application for license] a dues-paying membership in Kansas engaged in carrying out its objects." This five-year requirement applies only to fraternal and veterans' organizations. It further restricts the organizations who can receive a license under the fraternal and veteran classifications of the act.

The appellant in this case failed to bring to this court a record on appeal which would establish that the trial court's findings and order are not supported by the evidence. The evidence introduced at the trial is not included in the record. The record does not contain a statement that no evidence was introduced to support the trial court's finding that the three named organizations were not

fraternal organizations. Therefore the judgment and the findings of the trial court as to the three named clubs should stand.

I do not feel on the record presented to this court we can say, as stated in the opinion, that the trial court found "as a matter of law" that the three clubs named in the petition could not be bona fide fraternal organizations. I see no reason to direct the secretary of revenue to review these three applications. We should restrict the force of the injunction to enjoin the issuance of the three licenses applied for. The injunction should not be extended to cover all clubs holding class A liquor club licenses, since such clubs may or may not be bona fide nonprofit fraternal organizations.

I would affirm the judgment and uphold the injunction against the issuance of a bingo license to the Lakeshore Club, the Brookside Club, and the Rolling Hills Country Club. The record supports the conclusion they are social clubs not qualifying as fraternal organizations.

MILLER, J., joins in the foregoing dissenting opinion.