No. 62,113

RICHARD W. TOMLINSON, *Plaintiff*, v. THE CELOTEX CORPORATION, *et al., Defendants.*

(770 P.2d 825)

Opinion filed March 3, 1989.

*Dennis J. Dobbels*, of Polsinelli, White, Vardeman & Shalton, P.C., of Kansas City, Missouri, argued the cause, and *David A. Welte* and *Paul E. Vardeman*, of the same firm, and *Joseph R. Colantuono*, of the same firm, of Overland Park, were with him on the briefs for defendants The Celotex Corporation, Fibreboard Corporation, GAF Corporation, Keene Corporation, Owens-Corning Fiberglas Corporation, Owens-Illinois Corporation, Inc., and Pittsburgh-Corning Corporation.

*Bryce A. Abbott* and *Michael P. Oliver*, of Wallace, Saunders, Austin Brown & Enochs, Chartered, of Overland Park, were on the briefs for defendant Eagle-Picher Industries, Inc.

*Dan L. Wulz*, of Bryan, Lykins, Hejtmanek & Wulz, P.A., of Topeka, argued the cause, and *Paul H. Hulsey*, of Ness, Motley, Loadholt, Richardson & Poole, P.A., of Charleston, South Carolina, was with him on the brief for plaintiff.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This case was filed in the United States District Court for the District of Kansas and comes before this court by certification pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* This court accepted certification, and the question as framed by the certifying order is:

> Does the ten-year limitation of K.S.A. 60-513(b) apply to claims involving latent diseases and, if so, is it constitutional as applied to this plaintiff?

The plaintiff, Richard W. Tomlinson, filed this action on May

11, 1987. Based upon theories of strict liability and negligence, plaintiff's suit alleges that he sustained personal injuries through exposure to asbestos manufactured, sold, or distributed by the eight defendants. Defendants named in the suit include The Celotex Corporation, Fibreboard Corporation, GAF Corporation, Keene Corporation, Owens-Corning Fiberglas Corporation, Owens-Illinois Corporation, Inc., Pittsburgh-Corning Corporation, and Eagle-Picher Industries, Inc.

The defendants filed a motion for summary judgment, arguing that plaintiff's claim was barred by the ten-year limitation contained in K.S.A. 60-513(b). Plaintiff responded that the provisions of K.S.A. 60-513(b) do not apply to claims involving injuries arising from latent diseases, and that any application of the statute to such injuries is unconstitutional. In resolving the certified question, the order from the United States District Court states that "it is assumed that plaintiff's exposure to excessive quantums of asbestos, which gave rise to his cause of action against these defendants, occurred within the years 1965 through 1971. The fact of his asbestos-related injury, i.e., diagnosis, by reason of its latent state, was not reasonably ascertainable until September, 1986."

At the time the plaintiff filed this action, K.S.A. 60-513(b) provided:

"Except as provided in subsection (c) of this section, the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

In the present case, the plaintiff was last exposed to asbestos products manufactured, sold, or distributed by the defendants in 1971. His injuries due to this exposure, however, did not become reasonably ascertainable until approximately 15 years later. The parties dispute the applicability of the last clause of subsection (b) of K.S.A. 60-513 that "in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action." The plaintiff contends that the ten-year limitation contained in subsection (b) does not apply to asbestos-related injuries or other injuries arising from latent diseases.

The ten-year limitation of K.S.A. 60-513(b) has received only limited attention from this court. Prior to its adoption in 1964, a plaintiff had two years in which to bring a cause of action, measured from the time of the plaintiff's injury. *Kitchener v. Williams*, 171 Kan. 540, 236 P.2d 64 (1951). In 1964, the legislature retained the old rule in part, but also provided that, where the fact of the plaintiff's injury was not reasonably ascertainable until some time subsequent to the defendant's wrongful act, the limitations period would begin only upon the date the injury became reasonably ascertainable to the plaintiff. The legislature then included, however, the ten-year period as a limitation upon the new discoverability provision. In *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 94, 490 P.2d 649 (1971), this court summarized the effect of 60-513(b): "The Kansas provision has an outside limitation of ten years, but otherwise is essentially what has been identified as the 'discovery rule.'"

The ten-year limitation contained in K.S.A. 60-513(b) received its most important interpretation in *Ruthrauff, Administratrix v. Kensinger*, 214 Kan. 185, 519 P.2d 661 (1974). In *Ruthrauff*, the plaintiff's cause of action arose from an explosion and fire which resulted from the alleged negligent construction of a house. The defendants completed construction of the house in 1959. The explosion and fire, however, did not occur until 1970. This court held that the plaintiff, who filed suit within two years of the date of the explosion and fire, was not barred in bringing her action by the ten-year limitation. The ten-year limitation, the court held, applies "only to those cases in which the fact of injury is not reasonably ascertainable until some time after substantial injury occurs." 214 Kan. at 191. The ten-year limitation thus had no application "where the fact of substantial injury is immediately apparent as in the case of an explosion and resulting fire." 214 Kan. at 191.

In reaching this conclusion, the *Ruthrauff* court first briefly reviewed the rules of statutory construction:

"In construing the statutes of this state words and phrases must be construed according to the context and the approved usage of the language, but technical words and phrases which have acquired a peculiar and appropriate meaning in the law shall be construed according to their meaning acquired in the law. [Citation omitted.] A primary rule for the construction of a statute is to find the legislative intent from its language, and where the language used is plain and

unambiguous and also appropriate to an obvious purpose the court should follow the intent as expressed by the words used. [Citation omitted.] In examining an act of the legislature courts are required to consider and construe all parts thereof in *pari materia* [citation omitted] and may consider the historical background of the legislative act [citation omitted]. It is the duty of the courts to reconcile various provisions of an act in order to make them consistent, harmonious and sensible if that can be done without doing violence to plain provisions contained therein." 214 Kan. at 187-88.

The court then proceeded to apply these rules to the limitation periods contained in K.S.A. 60-513(b):

"The limitation placed on the various kinds of actions mentioned in K.S.A. 1973 Supp. 60-513 (1) through (6) is a primary limitation period imposed by the statute (2 years). Under K.S.A. 60-510 this primary 2 year period is not to commence until each cause of action shall accrue, *i.e.*, when substantial injury results. The 10 year provision is secondary and speaks to this primary period when it states 'but in *no event shall the period be extended* more than ten (10) years beyond the time of the act giving rise to the cause of action.' The 'period' referred to would appear to be the 'period of limitation' mentioned immediately preceding and this refers to the primary 2 year period provided for in the statute. This would indicate to us that the legislature did not intend to place a restriction on the primary 2 year period which commences when the action accrues. It is merely a limitation on the extension of the 2 year period when substantial injury is not immediately ascertainable. If the legislature intended otherwise it could have clearly expressed itself by saying that in no event shall *an action be commenced* more than 10 years beyond the time of the act giving rise to the cause of action. This they did not do." 214 Kan. at 191.

Therefore, because the substantial injury in *Ruthrauff* was "immediately ascertainable," the ten-year limitation did not apply and the plaintiff's cause of action was not barred. 214 Kan. at 192.

Although it is not controlling in the present case, it may be noted that the legislature has subsequently acted to reverse the rule in *Ruthrauff*. In 1987, the legislature amended the last clause of K.S.A. 60-513(b) to provide that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." Thus, under the new version of the statute, the ten-year limitation applies to all actions, whether or not the substantial injury was immediately ascertainable. However, the previous rule announced in *Ruthrauff* continues in effect until July 1, 1989, for those acts giving rise to a cause of action which occurred prior to July 1, 1987. K.S.A. 1988 Supp. 60-513(d). Thus, the rule announced in *Ruthrauff* remains applicable to the present case.

The defendants contend that the act giving rise to the cause of

action is plaintiff's last exposure to and inhalation of the asbestos products. Since the plaintiff's asbestos-related injury is not an injury such as a fire or explosion where the substantial injury is. immediately ascertainable, defendants maintain the plaintiff had ten years from last exposure to the asbestos to file his suit. Defendants argue that, since plaintiff was never again exposed to defendants' products after 1971, he would have suffered injury at that time and thereby would have caused the ten-year statute of limitation to start to run. The plaintiff, however, argues that the legislature did not intend to include latent disease claims within the limitations established in K.S.A. 60-513(b).

For support of his argument, the plaintiff relies primarily upon a North Carolina case, *Wilder v. Amatex Corp.*, 314 N.C. 550, 336 S.E.2d 66 (1985). In *Wilder*, the North Carolina Supreme Court held that N.C. Gen. Stat. § 1-15(b) (Interim Supp. 1976, repealed 1979), which included a ten-year maximum limitations period, did not apply to latent disease claims. However, the ruling in *Wilder* was based upon the unique nature of the North Carolina statute and is not helpful in resolving the correct interpretation of K.S.A. 60-513(b).

In *Wilder*, the statute at issue applied only to latent injury claims, those causes of action "having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damage not readily apparent to the claimant at the time of its origin." N.C. Gen. Stat. §1-15(b). In arriving at its conclusion, the court stated: "We note, importantly, that G.S. 1-15(b) is not intended to be a statute of limitations governing all negligence claims." 314 N.C. at 555. The limitation of the statute to latent injury claims, instead of all personal injury actions, permitted the North Carolina court to hold that the statute had only a narrow application and did not affect the validity of a prior line of North Carolina workers' compensation cases involving latent diseases. The rules announced in the latent disease cases were held to be independent of and unaffected by the ten-year limitation in the latent injury statute. 314 N.C. at 561.

This decision by the *Wilder* court was due to the narrow scope of the North Carolina statute. Because the statute did not apply to all negligence actions, the North Carolina Supreme Court reasoned that the rules announced in prior latent disease cases were

unaffected by the statute, and that the legislature did not intend to apply the ten-year limitation in the statute to such cases. The approach adopted by the *Wilder* court is not helpful in the present case, since the Kansas statute containing the ten-year limitation applies by its express terms to all negligence actions, including latent disease claims.

The ten-year limitation and the other provisions contained in K.S.A. 60-513(b) apply to those causes of action listed in the section. Subsection (a) currently lists seven different types of actions including, under paragraph (4), "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated." Thus, by its express terms, the statute makes the ten-year limitation provision contained in subsection (b) applicable to all personal injury actions, whether based upon negligence or strict liability. Unlike the North Carolina statute interpreted in *Wilder*, there is no basis for inferring that the legislature intended to exclude latent diseases from the scope of the statute.

Whether the ten-year limitation contained in K.S.A. 60-513(b) applies to the plaintiff's cause of action must be resolved by an analysis of the Kansas statute. As noted in Judge Kelly's order of certification, the federal district court decisions interpreting subsection (b) have yielded different results. The plaintiff, citing *Colby v. E.R. Squibb & Sons, Inc.*, 589 F. Supp. 714 (D. Kan. 1984), argues that the ten-year limitation does not begin until the person bringing the action has received a substantial injury. Thus, he argues that the ten-year limitation did not begin to run upon his last exposure to asbestos in 1971, but upon the diagnosis of his asbestos-related injury in 1986.

The ten-year limitation contained in K.S.A. 60-513(b) begins at "the time of the act giving rise to the cause of action." In *Colby*, this phrase was interpreted to mean the date on which the plaintiff received a substantial injury and not the date of the defendant's action.

Chief Judge Earl E. O'Connor reached a different conclusion in *Cowan by Cowan v. Lederle Laboratories*, 604 F. Supp. 438 (D. Kan. 1985). In *Cowan*, the court, citing the analysis of Judge Rogers in *Purcell v. Abbott Laboratories*, No. 81-4237 (D. Kan., *unpublished*, June 2, 1982), held that the phrase "the act giving rise to the cause of action" meant the date of the exposure of the

injured party to the allegedly harmful substance, and not the date of the subsequent substantial injury.

In *Cowan*, plaintiffs had brought an action for the physical and mental damages allegedly caused by the discoloration of their daughter's teeth due to her ingestion of tetracycline produced by the defendant. After quoting the earlier interpretation of the statute in *Colby*, the court stated:

"If the latter (gerund) construction is correct, then 'the time of the act giving rise to the cause of action' might be better phrased as 'the time when the cause of action accrued.' One would then look to the opening lines of K.S.A. 60-513(b), which state that '. . . the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury.' In other words, 'the act giving rise to the cause of action' would be the causing of substantial injury—here, the discoloration of Lisa's teeth. Plaintiffs would then have up to ten years after *that* in which to file suit (but no more than two years after the fact of Lisa's injury had become reasonably ascertainable).

"If one looks only at the portion of K.S.A. 60-513(b) which follows the last comma, this latter construction seems entirely reasonable. As Judge Rogers noted, however, this construction gives the phrase 'act giving rise to the cause of action' two different meanings within the same subsection. Where it first appears in that subsection, the phrase could not possibly be construed as a gerund. Rather, it must refer to the time of ingestion of tetracycline. Because that construction is equally reasonable as to the second appearance of this phrase, we decline to assume that the legislature intended the phrase to have two different meanings within the same subsection. Therefore, both appearances of the phrase 'act giving rise to the cause of action' must refer to Lisa Cowan's ingestion of tetracycline." 604 F. Supp. at 443.

While it is possible to interpret the last clause of subsection (b) in isolation so that the ten-year maximum limitation period does not commence until the time of substantial injury, this interpretation requires separate and different interpretations of the phrase "the act giving rise to the cause of action."

"It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious, and sensible if that can be done without doing violence to plain provisions therein contained." *State, ex rel., v. Kalb*, 218 Kan. 459, 464, 543 P.2d 872 (1975), *modified* 219 Kan. 231, 546 P.2d 1406 (1976). The various provisions of a statute should be construed together to result in consistency rather than inconsistency, if it is reasonably possible to so construe them. *Terrill v. Hoyt*, 149 Kan. 51, 55, 87 P.2d 238 (1939). In the present case, a consistent interpretation of the phrase "the act giving rise to the cause of action,"

as the phrase is used in the separate clauses of K.S.A. 60-513(b), requires interpreting the phrase to mean the defendant's wrongful act, rather than the occurrence of a substantial injury.

Applying this interpretation to the instant case, we conclude that the ten-year limitation contained in subsection (b) began, at the latest, upon the last exposure of the plaintiff to asbestos produced, sold, and distributed by the defendants in 1971.

The plaintiff makes two additional arguments which should be briefly noted. First, the plaintiff relies upon the holding of this court in *Miller v. Beech Aircraft Corporation*, 204 Kan. 184, 460 P.2d 535 (1969). In *Miller*, the court held that a cause of action for damages resulting from a disease "comes into being when the disease and its cause becomes manifest, or is reasonably ascertainable." 204 Kan. at 189. However, in *Miller*, the plaintiff had filed suit "[a]pproximately twenty-three months" after he withdrew from employment with the defendant and ended his exposure to the dust which was allegedly the source of his emphysema and pulmonary fibrosis. 204 Kan. at 184. Thus, the ten-year limitation contained in the last clause of K.S.A. 60-513(b) was never at issue in the case.

Second, the plaintiff makes an argument relating to K.S.A. 60-3303. This portion of the Kansas Product Liability Act provides for a "[u]seful safe life ten-year period of repose" in products liability cases. Under K.S.A. 60-3303(a), a product seller is generally not liable for the harm caused by the use of a product after the expiration of its useful safe life. The statute also provides that, for products causing harm more than ten years after the time of their delivery, a rebuttable presumption arises that the harm was caused after the expiration of the product's useful safe life. K.S.A. 60-3303(b)(1).

The statute also contains a limitation upon the ten-year rebuttable presumption. Subparagraph (b)(2)(D) of K.S.A. 60-3303 provides:

"The ten-year period of repose established in paragraph (1) of this subsection shall not apply if the harm was caused by prolonged exposure to a defective product, or if the injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery, or if the harm caused within 10 years after the time of delivery, did not manifest itself until after that time."

The plaintiff argues that subparagraph (b)(2)(D) is meaningless if the ten-year limitation period contained in K.S.A. 60-513(b)

applies to products causing latent injuries. According to the plaintiff's argument, if the ten-year limitation period contained in K.S.A. 60-513(b) is deemed to apply to such actions, then K.S.A. 60-3303(b)(2)(D) is unnecessary, since such action would in any case be barred by the statute of limitations. Thus, the plaintiff concludes that K.S.A. 60-3303 demonstrates the legislature's intent to not include cases involving such injuries as asbestosis within the scope of the ten-year limitation of K.S.A. 60-513(b).

We do not agree with plaintiff's conclusion. As we noted earlier, the provisions of K.S.A. 60-513(a)(4) apply to all actions "for injury to the rights of another, not arising on contract, and not herein enumerated." The useful safe life provisions contained in K.S.A. 60-3303 were not adopted until eight years after the enactment of K.S.A. 60-513, and expressly provide: "Nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60-513." K.S.A. 60-3303(c).

Finally, the plaintiff contends that the application of the ten-year limitation contained in K.S.A. 60-513(b) to claims involving asbestos-related injuries is unconstitutional and violates the equal protection guarantees of the United States Constitution and the Kansas Constitution, the guarantee of due process of law contained in the Fifth Amendment, and the guarantee of a remedy by due course of law provided by Section 18 of the Kansas Bill of Rights.

Most courts which have addressed the issue of the constitutionality of a ten-year maximum limitation period have upheld the constitutionality of the statute. In *Pitts v. Unarco Industries, Inc.*, 712 F.2d 276 (7th Cir.), *cert. denied* 464 U.S. 1003 (1983), the United States Seventh Circuit Court of Appeals upheld the constitutionality of the Indiana statute (Ind. Code § 33-1-1.5-5 [1982]), which provided a general two-year statute of limitations in products liability cases, but limited to ten years after the delivery of the product. The court found that the Indiana statute possesses a rational objective, and rejected the claim of the plaintiff, who suffered from asbestosis, that the statute violated equal protection under the laws and deprived her of property without due process.

The Seventh Circuit reaffirmed its *Pitts* decision that the Indiana ten-year statute of repose did not violate equal protec-

tion guarantees in *Braswell v. Flintkote Mines, Ltd.*, 723 F.2d 527 (7th Cir. 1983). In *Braswell*, which involved another constitutional challenge to the Indiana law by a plaintiff suffering from an asbestos-related injury, the court also held that the statute did not violate due process. 723 F.2d at 530-31.

Tennessee's ten-year statute of repose in products liability cases (Tenn. Code Ann. § 29-28-103 [1980]) was upheld in *Hawkins v. D & J Press Co., Inc.*, 527 F. Supp. 386 (E.D. Tenn. 1981). A similar decision was reached in *Buckner v. GAF Corp.* 495 F. Supp. 351 (E.D. Tenn. 1979), in which the court found that Tennessee's ten-year limitation statute "begins to run, at least insofar as these plaintiffs are concerned, from the date on which the asbestos insulation products manufactured and sold by [the defendants] were first purchased for use or consumption." 495 F. Supp. at 353. Applying its prior decision in *Hargraves v. Brackett Stripping Machine Company*, 317 F. Supp. 676 (E.D. Tenn. 1970), the court concluded that the application of the ten-year limitation to the plaintiffs' asbestos-related claims was not violative of due process. 495 F. Supp. at 353.

The Fourth Circuit Court of Appeals upheld the constitutionality of the North Carolina ten-year statute of limitations period (N.C. Gen. Stat. § 1-15[b] [Interim Supp. 1976, repealed 1979]). In *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984), the constitutionality of the ten-year limitation period was challenged by a plaintiff allegedly suffering from an asbestos-related injury. The court stated:

"Although a certain number of plaintiffs will always have a problem with a statute of limitation or repose, this does not mean that they have been denied a constitutional right. Statutes limiting the time within which an action may be brought are the result of a legitimate legislative determination which balances the rights and duties of competing groups. Such statutes serve a necessary function in the fair administration of justice." 736 F.2d at 956.

The court then concluded that the statute possessed a rational basis and that it did not violate equal protection.

"The plaintiff's argument that he has been denied equal protection because there is no legitimate public purpose to § 1-15(b) and because the statute promotes the interest of special groups over injured parties and the public in general is without merit. Repose in the law is a legitimate public concern, and the repose granted after ten years by § 1-15(b) is balanced against the plaintiff's expanded rights under the statute." 736 F.2d at 958.

The court also found that the ten-year limitation did not violate

Article 1, § 18 of the Constitution of the State of North Carolina which, in part, guarantees to every person "remedy by due course of law." The court found:

"Such due course of law has been established by the legislature of North Carolina. The plaintiff's 'remedy' is subject to due course of law as established by the legislature, which has the power to define the circumstances under which a remedy may be pursued. See *Lamb v. Wedgewood South Corp.*, [308 N.C. 419, 302 S.E.2d 868 (1983)].

"The problem of the statute is put in proper perspective by the court in *Lamb*, 302 S.E.2d at 879: '[a]s to whether an act is good or bad law, wise or unwise, it is a question for the legislature and not for the courts—it is a political question.' " 736 F.2d at 958.

In *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 312, 502 P.2d 672 (1972), this court discussed the general rules to be considered in the determination of the constitutionality of a statute of limitations:

"The general rule respecting constitutionality of statutes of limitations is stated in 53 C.J.S., Limitations of Actions § 2, as follows:

" 'The legislature has power to enact statutes of limitation; it may enact a statute which limits the time within which actions may be brought to enforce demands where previously there was no period of limitation or it may change the existing statute of limitations. It may prescribe different periods of time within which different species of obligations may be enforced. Such statutes have usually been sustained as against various particular objections.

" 'As to existing causes of action, a statute of limitations must afford a reasonable time for the commencement of an action before the bar takes effect. If the statute operates immediately to cut off the existing remedy, or within so short a time as to give the party no reasonable opportunity to exercise his remedy, then the retroactive application of it is unconstitutional as to such party. The time allowed cannot be pronounced unreasonable unless it is so short as under the circumstances to amount to a practical denial of the right itself.' (pp. 906-907.)

"Kansas has adhered to the foregoing in many decisions (see e.g., *State, ex rel., v. Board of Education*, 137 Kan. 451, 21 P.2d 295; *In re Estate of Reed*, 157 Kan. 602, 142 P.2d 824)."

In *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 90, 490 P.2d 649 (1971), this court noted that, even though a statute of limitations may have a harsh impact, the court had long recognized "that limitations are created by statute and are legislative, not judicial acts." And in *State v. Bentley*, 239 Kan. 334, 339, 721 P.2d 227 (1986), we held that statutes of limitation are measures of public policy and are entirely subject to the will of the legislature. The court has also noted that the opinion of the legislature is entitled to great weight in its determination as to

the reasonableness of a time limitation. See *Kinyon v. Soldiers' Compensation Board,* 118 Kan. 367, 368, 234 Pac. 949 (1925).

In *Stephens v. Snyder Clinic Ass'n,* 230 Kan. 115, 631 P.2d 222 (1981), this court upheld the constitutionality of K.S.A. 60-513(c). This statute provides for a maximum four-year limitation period in medical malpractice cases, compared to the ten-year maximum limitation period contained in K.S.A. 60-513(b). Applying a rational basis test, the court concluded that the four-year limitation period did not violate equal protection guarantees. This court stated:

"The courts recognize that statutes of limitations are matters of legislative prerogative, carrying the presumption of constitutional validity unless shown to be unreasonable and arbitrary. *Sellers v. Edwards,* 289 Ala. 2, 6, 265 So. 2d 438 (1972); *Owen v. Wilson,* 260 Ark. 21, 537 S.W.2d 543 (1976). The courts have acknowledged that the limitation can be harsh and inequitable in certain circumstances, particularly where the statute of limitations expires before the injury can be discovered. As stated in *Schwartz v. Heyden Chem. Corp.,* 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, *amended on other grounds* 12 N.Y.2d 1073, *cert. denied* 374 U.S. 808 (1963):

" '[P]erhaps the possibility of feigned cases against unprepared defendants and the difficulties of proof in meritorious cases led to a decision that society is best served by complete repose after a certain number of years even at the sacrifice of a few unfortunate cases.' p. 218.

"In *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 89 L. Ed. 1628, 65 S. Ct. 1137 (1945), it was explained:

" 'Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not though the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.' p. 314." 230 Kan. at 131-32.

The Tenth Circuit Court of Appeals upheld K.S.A. 60-513(c) against a due process challenge in *Brubaker v. Cavanaugh,* 741 F.2d 318, 321 (10th Cir. 1984).

We find that our decision in *Stephens* is controlling in the instant case. Although it may be true that many asbestos-related injuries will not manifest themselves until more than ten years

after last exposure to asbestos products produced, manufactured, or sold by a defendant, this in itself does not establish the unconstitutionality of the ten-year limitation period contained in K.S.A. 60-513(b). It is equally true that many injuries arising from medical malpractice will fail to manifest themselves within four years after the alleged act of malpractice. For example, many injuries due to medical malpractice, such as injuries arising from mistakenly prescribed drugs, may not arise for many years or may not produce injuries, such as birth defects, until the second generation. This court, however, unequivocally upheld a four-year limitation in *Stephens*. K.S.A. 60-513(b) provides a maximum limitation period more than twice as long as the one upheld in *Stephens*. We are cognizant of the harsh effect the application of K.S.A. 60-513(b) has in the instant case, as was Justice Prager (now Chief Justice, retired) in speaking for the majority of the court in *Stephens*:

"The effect of the statute of limitations requires an unfortunate result in the present case, especially since plaintiff's injury was not ascertainable before the statute extinguished her right to bring the action, and her suit would have been timely had the amended statute not intervened. It is clear, however, that the legislature has the authority to set statutes of limitation, that the classification of 'health care providers' for beneficial treatment is justified and reasonable, and without constitutional infirmity." 230 Kan. at 132.

We find that K.S.A. 60-513(b) is constitutional as applied to the plaintiff and therefore answer the question certified by the United States District Court in the affirmative.