**Charlett M. HARDING, Individually and as Personal Representative of the Estate of Jerry R. Harding, Deceased, Plaintiff,**

v.

**PROKO INDUSTRIES, INC.; Georgia–Pacific Corporation; National Gypsum Company; and United States Gypsum Company, Defendants.**

No. 89–1498–K.

United States District Court,
D. Kansas.

May 2, 1991.

Mark A. Furney of Jones & Granger, Overland Park, Kan., John D. Roven of Jones & Granger, Houston, Tex., Joseph F. Rice, Ness, Motley, Loadholt, Richardson & Poole, Barnwell, S.C., for plaintiff.

Jay F. Fowler, Foulston & Siefkin, Wichita, Kan., for Proko Industries.

Eldon Boisseau, Turner & Boisseau, Wichita, Kan., for Georgia–Pacific.

E. Ralph Walker, Charles J. Kalinoski, and CeCelia Ibson of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, Iowa, Dennis J. Stanchik, Silverman & Stanchik, Mission, Kan., for Nat. Gypsum & U.S. Gypsum.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Jerry Harding was treated for mesothelioma-induced pleural pain in April, 1988 in New York. He subsequently received treatment at New York's Memorial/Sloan Kettering Cancer Institute. Harding died from malignant mesothelioma in October, 1988. He was 56 years old.

For approximately 20 years, from 1940 to 1960, Jerry Harding lived in Canyon, Texas. In 1960, he moved to Liberal, Kansas, where he resided until the following year. In 1961, Harding briefly moved to Colorado Springs, Colorado. He returned to Kansas from Colorado the same year, and lived in Wichita, Kansas from 1961 until 1988.

During the time he lived in Texas, Harding worked as a self-employed painting contractor in Amarillo from 1954 to 1960. In 1961, Harding was employed by several different employers, including Tradewind Industries, Inc., Bethel J. Massa, and Everett E. Johns, all of Liberal, Kansas. He then worked for Don Carter Painting of Wichita from 1961 to 1963. He was subsequently self-employed until his death. From 1961 to 1974, Harding was a member of Local 76 of the Painters' Union in Wichita.

The plaintiff, Charlett M. Harding, is a resident of Wichita, Kansas. Most of the witnesses in the present action reside in Kansas. Some of the medical witnesses reside in New York.

The present action was originally filed on June 29, 1989, in the United States District Court for the Eastern District of Texas. On motion of the defendants, the matter was transferred to Kansas pursuant to 28 U.S.C. § 1404(a).

The plaintiff alleges that while a citizen of Texas and while employed in Texas, Jerry Harding was exposed to asbestos products manufactured by the four defendants. Proko Industries is a Texas corporation, with its corporate headquarters located in Texas. Georgia–Pacific is a corporation incorporated under the laws of the State of Georgia. Harding's exposure to its products, if any, occurred in Texas, and not Kansas. National Gypsum manufactured drywall joint treatment products containing asbestos from 1935–1976 in Rotan, Texas. United States Gypsum manufactured drywall products containing asbestos in Dallas and Sweetwater, Texas during the period in which Harding was employed in Texas.

The plaintiff has now moved for a determination that Texas law should govern the present action. The motion has been opposed by defendants Proko, National Gypsum, and United States Gypsum, who argue that Kansas law (including the 10–year statute of repose contained in K.S.A. 60–513(b)) should apply.

All of the parties have recognized that in selecting the appropriate law to govern the present action, this court must adhere to the choice of law rules of Texas, the transferor forum. *Ferens v. John Deere Co.,* 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The parties also agree that Texas follows the most significant relationship test adopted by the Restatement (Second) of Conflicts of Laws (1971). The issue for this court, therefore, is whether the courts of Texas, applying the considerations established by the Second Restatement, would find Kansas or Texas law to be applicable to the plaintiff's claims.

Section 6(2) of the Second Restatement identifies seven general considerations which are relevant to the resolution of a given conflict of laws. These considerations include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

In resolving a choice of law problem in an action for personal injury, the court, following the general principles established in § 6, should follow the local law of the state with the most significant relationship to the occurrence of the wrong and to the parties. Restatement, § 145(1). Specific contacts which are to be taken into account in applying the principles of § 6 are listed in § 145(2):

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

### 1. *The Needs of the Interstate System*

The defendants argue that it would damage our federal system to impose the Texas statute of limitations. To apply the Texas limitations period because the defendants produced asbestos products in that state, the defendants argue, would be "to ignore the existence of interstate commerce in this country and the fact that [the defendants] are subject to jurisdiction in many states

based upon the fact that they sell their products in interstate commerce."

This is singularly unpersuasive. The selection of a Texas statute of limitations for a cause of action arising from exposure to a dangerous substance manufactured in Texas does nothing to upset the system of interstate commerce, nor does it damage the legitimate expectations and interests of the manufacturers of such products. Selecting either the Kansas or Texas statute of limitations has no bearing on the "harmonious relations between states" which this element of the Restatement seeks to foster. Restatement, § 6, comment d.

### 2. The Relevant Policies of Kansas and Texas

The Gypsum defendants admit that Texas has an interest in the plaintiff's cause of action, but assert that this interest merely takes the form of support for the choice of law reached under the Second Restatement. The defendants offer no authority in support of this limited interpretation of the interests of Texas. More importantly, that interpretation simply begs the question of whether a state has an interest in a given choice of law. The court finds that Texas policy, as expressed in that state's wrongful death statute, supports the application of its law in cases such as the present. See Tex.Rev.Civ.Prac. & Rem. Code Ann. § 71.031.

How strong is the interest of Kansas in seeing its 10–year statute of repose applied in the present case? Not very. In Tomlinson v. Celotex Corp., 244 Kan. 474, 770 P.2d 825 (1989), the Kansas Supreme Court held that the 10–year period of repose contained in K.S.A. 60–513(b), by the plain language of the statue, applied to latent disease actions. The court further determined that this application was not unconstitutional.

Nonetheless, the court was clearly unenthusiastic about the result. That "harsh effect," as the Tomlinson court termed it, was the product of the broad language of the statute, rather than the necessary product of a conscious determination by the state legislature that latent disease claims

ought to be brought within 10 years after any exposure to disease-inducing toxic substances. 244 Kan. at 486, 770 P.2d 825. The language selected by the legislature in K.S.A. 60–513(b) broadly applied to any claims, even those involving latent diseases. The selection of limitations periods being a matter normally left to the discretion of the legislature, the Tomlinson court held that the statute barred the plaintiff's claim, even though such an interpretation "require[d] an unfortunate result in the present case." Id., at 466, 770 P.2d 825 (quoting Justice Prager in Stephens v. Snyder Clinic Ass'n, 230 Kan. 115, 132, 631 P.2d 222 (1981)).

The state legislature has also taken the view that, whether or not the result in Tomlinson was the correct interpretation of K.S.A. 60–513(b), such a constrained limitations period should not be the state's law with regard to latent disease actions. Promptly after the decision by the state supreme court in Tomlinson, the legislature amended the statute to remove latent disease claims from the 10–year limit of K.S.A. 60–513(b) and substituted a specific limitations provision for such actions. See Waller v. Pittsburgh Corning Corp., 742 F.Supp. 581 (D.Kan.1990).

The Kansas 10–year statute of repose, at least insofar as its application to latent diseases, is neither a strong nor passionately held policy of the State of Kansas. Rather, it seems at best a preference, now strongly disfavored by the state legislature, arising from the inartful and broad language of the statute reluctantly construed by the state supreme court in Tomlinson. The rule established in that case, far from being the favored child of state policy, appears rather the unloved (and unlovable) offspring produced by inattentive and duly chastened parents.

### 3. The Protection of Justified Expectations

The Gypsum defendants argue that they "reasonably expected that Kansas law would be applied in the resolution of this dispute." But the defendants' expectations at the time of transfer of the present ac-

tion, after the suit had been filed, are irrelevant. This element of the Restatement's analysis deals with the expectations of the parties at the time of the conduct which underlies the cause of action, and is premised on the principle that "it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Restatement § 6, comment g.

Thus, in applying this element to the present case, the relevant time is that of Harding's exposure to the asbestos produced by the defendants. In that context, it is simply absurd to argue that the defendants, in manufacturing and distributing asbestos products, were guided in their conduct by a decision of the Kansas Supreme Court still some 20 years in the future. The policy of justified expectations does not support a preference for choice of law rules to protect the defendants here.

### 4. The Basic Policies Underlying the Particular Field of Law

No party has articulated any applicable or compelling Kansas policy which would support the application of its own principles in the field of tort law. The policies of the two alternate potential sources of local law, Texas and Kansas, are therefore in equipoise, without any principled justification for a preference for one over the other.

### 5. Certainty, Predictability and Uniformity of Result

The defendants argue Kansas law will allow for a certain, predictable, uniform result. No convincing reason is suggested for this, or for why Texas law would not yield same result. The court finds that this consideration has no relevance to the just resolution of the present issue.

### 6. Ease in the Determination and Application of the Law

The Gypsum defendants suggest application of Kansas law would be easier for the court and counsel. The court, however, anticipates it will have no difficulty in applying the law of Texas and is confident that learned counsel for all parties will be able to demonstrate similar adaptability.

In the present case, the decedent was exposed to asbestos products in both Texas and Kansas. The court finds that Harding's exposure in Texas, while a resident of Texas, to products which were produced in Texas or produced by Texas companies, does not require a resolution dependent on the use of Kansas law. Harding's only exposure to the products of defendants National Gypsum and Georgia–Pacific occurred in Texas. Harding was also exposed to the asbestos products of defendants Proko and United States Gypsum in Texas and Kansas. The asbestos-related products of National Gypsum and United States Gypsum were produced in Texas.

Defendant Proko argues that Texas law should not be applied, noting that plaintiff Charlett Harding's direct injuries were incurred in Kansas, and that Jerry Harding's cause of action accrued when the mesothelioma manifested itself into physical symptoms while he was a resident of Kansas. The Second Restatement, however, focuses only on the place of the defendant's conduct and "the place where the injury occurred," not where it may have been discovered. Restatement § 145(2)(a).

Thus in *Celotex v. Meehan*, 523 So.2d 141 (Fla.1988), the court found that New York had the most significant relationship with the case, where the decedent, at the time of his exposure in New York to the asbestos products of the defendant, was a resident of New York, as was the defendant itself. The fact that the decedent had later moved to Florida, where his latent disease "manifested itself and was discovered in this state," was irrelevant. 523 So.2d at 146.

Similarly, the fact that Harding's fatal mesothelioma was detected and, allegedly, produced its tragic results while he was a resident of Kansas does not compel the determination that Kansas law governs the present action. The salient consideration here is that exposure to all of the defendants' products occurred in Texas. In contrast, only some of the defendants' products caused exposure in both Kansas and Texas. Under these circumstances, the

court is convinced a Texas court would not hesitate to determine that the present action is governed by the laws of Texas. The substantive law of Kansas, including K.S.A. 60–513(b) and the exegeses applied to it in *Tomlinson* and *Waller*, therefore have no bearing on the present matter.

IT IS ACCORDINGLY ORDERED this 1 day of May, 1990, that the plaintiff's motion for determination of law (Dkt. No. 92) is hereby granted.