·Charles KOCH, Plaintiff,

v.

SHELL OIL COMPANY and
Feed Specialties Co.,
Inc., Defendants.

Civ. A. No. 92–4239–DES.

United States District Court,
D. Kansas.

March 18, 1993.

**1435**

Hal D. Meltzer, Turner & Boisseau, Chartered, Overland Park, KS, for Shell Oil Co., defendant.

James P. Nordstrom, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Feed Specialties Co., Inc., defendant.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the motion of defendant Feed Specialties Co., Inc., for summary judgment.

Plaintiff's complaint claims that a number of his cattle became diseased and died as a result of ingesting the oral larvacide tetrachlorvinphos, commonly known by its trade name Rabon Oral Larvacide, or R.O.L. (hereinafter "Rabon").[1] Defendant Shell Oil Company manufactured Rabon during the relevant time period. Defendant Feed Specialties Co., Inc., a livestock feed producer, incorporated Rabon into a feed premix that it distributed to the feed stores where plaintiff purchased feed ingredients for his cattle.[2]

Defendant Feed Specialties Co., Inc., ("Feed Specialties") contends in its summary judgment motion that the plaintiff's claim is barred by the ten-year statute of repose codified in K.S.A. 1992 Supp. 60–513(b), and therefore it is entitled to judgment as a matter of law.

### Nature of the Claim

Plaintiff brings this diversity suit against the defendants on the theories of strict liability, failure to warn, negligence, and breach of warranty. He seeks damages from the defendants for property damage to his cattle, his own personal injuries,[3] pain and suffering, lost income, and lost future profits. Under the Kansas Product Liability Act, plain-

Ronald R. Hein, Stephen P. Weir, Hein, Ebert and Rosen, Chartered, Topeka, KS, for plaintiff.

---

1. Rabon is added to cattle feed for the purpose of controlling fly larvae in manure. Most of the Rabon manufactured by Shell was sold to feed companies, such as the defendant Feed Specialties Co., Inc., to be incorporated into their own brands of cattle feed. *See Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1182 & n. 5 (5th Cir. 1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). Rabon was developed in the late 1960's and was first sold in 1972. *Id.* at 1182.

2. The feed stores from which plaintiff purchased the Rabon premix are not parties to this litigation.

3. Plaintiff claims that he has experienced physical abnormalities and symptoms as a result of eating beef containing residual Rabon and drinking milk produced by his dairy herd. In addition, plaintiff contends that he was exposed to Rabon by touch and by respiration.

tiff's complaint states a product liability claim against each of the defendants. *See* K.S.A. 60–3302(c), (d).

### Jurisdiction and Venue

Plaintiff is a resident of Kansas. Defendant Shell Oil Company is a Texas corporation, and for purposes of diversity jurisdiction is deemed a resident of Texas. Defendant Feed Specialties Co., Inc., an Indiana corporation, has its principal place of business in Iowa. Plaintiff seeks more than $50,000 in damages. The court finds it has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Venue in this court is proper under 28 U.S.C. § 1391(a).

### Summary Judgment Guidelines

■ Under Fed.R.Civ.P. 56, the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

■ The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party must go be-

yond the pleadings and designate specific facts, by affidavits, depositions, answers to interrogatories, and admissions on file, showing that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

■ The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). However, a mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### Facts

The essential facts material to the issue before the court are undisputed. For purposes of deciding this summary judgment motion, the relevant facts are as follows, considering the record in the light most favorable to the plaintiff as the party opposing the motion for summary judgment.

Plaintiff operated a dairy farm in Auburn, Kansas, until 1986, when he sold his herd at auction. On April 15, 1979, plaintiff began feeding his cattle products containing Rabon, an oral larvacide used as a feed additive during the fly season to control flies. Thereafter, beginning in May 1979, and continuing until July 1986, a significant number of plaintiff's cattle died.

On October 30, 1981, after one of his Holstein cows died, plaintiff had the animal autopsied. Plaintiff was advised by experts that Rabon could possibly have had something to do with the death of his cattle. Consequently, plaintiff suspected that Rabon was the cause of his cattle's death. Plaintiff ceased feeding Rabon to his cattle on No-

vember 1, 1981, coinciding with the end of the fly season.

■ In December 1981, one of plaintiff's bulls died. Plaintiff saved a rib portion of the animal's tissue at the time of the autopsy and kept it in his freezer. In 1982 after additional cattle died, a veterinarian sent tissue excised from the plaintiff's dead animals to a laboratory for analysis to determine whether Rabon was present. However, laboratory testing found no detectable amounts of Rabon present in the animal tissue. Further, none of the veterinarians consulted by the plaintiff could state that Rabon was present in the animals or that it was the cause of death. In the opinion of one of the veterinarians who autopsied the bull, Rabon could not have been the cause of death. The feed stores from which plaintiff purchased the Rabon premix also told him that Rabon could not have been the cause of his cattle's death.[4]

Between 1979 and 1986, a total of 98 cattle in plaintiff's herd died. In mid–1986, he sold the remaining 228 cattle in his herd at auction. The most recent cattle loss claimed by the plaintiff occurred on July 15, 1986.

Plaintiff consulted attorneys in 1983, 1984, and 1987 concerning his suspicion that the death of his cattle was caused by their ingestion of Rabon. However, he did not file suit to recover damages, allegedly because repeated laboratory analyses of tissue samples taken from his dead cattle failed to reveal the presence of Rabon. He contends that he lacked evidentiary support for his suspicion that Rabon was the cause of death, because the available methods to test for the presence of Rabon were inadequate.

In March 1991, laboratory experts developed the technology to ascertain whether any residual Rabon could be identified in plaintiff's tissue samples.[5] Upon analysis of the frozen tissue from plaintiff's bull that had died in 1981, and a sample of human tissue taken from plaintiff's own body in 1989, the experts confirmed the presence of minute amounts of Rabon in both tissue samples. Plaintiff testified by deposition that he learned of the experts' findings in April 1991. The report of the analysis of the tissue sample from plaintiff's bull was dated in May 1991.

Plaintiff ultimately filed suit on November 25, 1991, originally in Shawnee County District Court. The defendants removed the case to federal court. Thereafter, the case was voluntarily dismissed without prejudice on the motion of the plaintiff. Within six months of dismissal, the case was refiled in this court on October 14, 1992.[6]

---

4. The court acknowledges that the evidence submitted by the plaintiff in support of these conflicting opinions as to whether Rabon was the cause of death consists solely of his own deposition testimony. The plaintiff's testimony regarding such out-of-court statements by others does not constitute inadmissible hearsay. For the purpose of this motion, these statements are relevant to the issue of when the cause of plaintiff's losses became reasonably ascertainable to him, see discussion in text *infra*, and not for the purpose of proving the truth of the matters asserted in the out-of-court statements. *See* Fed.R.Evid. 801(c) (defining hearsay). Further, contrary to the arguments of the defendant in its summary judgment motion, the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), explicitly declined to hold that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.

5. Plaintiff's expert has submitted an affidavit asserting that prior to March 1991, the sophisticated instrumentation and expertise was not commonly available to accurately determine the quantity of Rabon in animal or human tissue.

6. The plaintiff contends that by virtue of K.S.A. 60–518, the refiled complaint relates back to the original filing date of November 25, 1991. Defendant appears to concede in its summary judgment motion that plaintiff's claim was filed November 25, 1991.

The court, however, has reservations regarding the applicability of K.S.A. 60–518 to this case. The court questions whether plaintiff's voluntary dismissal of the earlier case complies with the requirement of K.S.A. 60–518 that "plaintiff *fail* in such action otherwise than upon the merits...." (emphasis added). To so construe the statute would appear to encourage judge-shopping. Further, the savings statute expressly applies only when the first action was timely filed, but the statute of limitations expires before the second action is filed. Under plaintiff's theory, however, the complaint filed October 14, 1992, would have been filed within two years of the date the claim accrued, and therefore would not be time-barred. *See* K.S.A. 60–510; K.S.A. 1992 Supp. 60–513(a)(2), (4). Nor would the statute of repose bar the claim, since plaintiff relies on the latent disease exception in K.S.A. 1992 Supp. 60–3303(d)(1).

*Analysis*

■ Defendant Feed Specialties initially contends that the claim is barred under the provisions of K.S.A. 1992 Supp. 60–513.[7] As a general rule, the cited statute provides that a tort action must be brought within two years from the date that the act giving rise to the cause of action first causes substantial injury. K.S.A. 1992 Supp. 60–513(a), (b). However, if the fact of injury is not reasonably ascertainable until sometime after the initial tortious act, the limitation period commences at the time the fact of injury becomes reasonably ascertainable to the injured party. K.S.A. 1992 Supp. 60–513(b).

■ As interpreted by the courts, ascertainment of the "fact of injury" for purposes of triggering the discovery rule embodied in K.S.A. 1992 Supp. 60–513(b) includes not only ascertainment of the injury itself, but also the cause of the injury. For example, the Kansas Supreme Court has held that the plaintiff's mere suspicion regarding the cause of illness, at least when medical opinions as to the cause of the illness differ, is not suffi-

cient as a matter of law to constitute reasonable ascertainment for purposes of the discovery rule. *See Gilger v. Lee Const., Inc.,* 249 Kan. 307, 820 P.2d 390, 400–01 (1991) (plaintiffs suspected carbon monoxide gas poisoning caused their illness, but medical opinions differed; evidence was controverted as to when injury was reasonably ascertainable and when plaintiffs realized their health problems were associated with the alleged improperly vented furnace); *see also Cowan v. Lederle Laboratories,* 604 F.Supp. 438, 442 (D.Kan.1985) ("until medical science had established the link between tetracycline ingestion and the discoloration of permanent teeth, plaintiffs could not have ascertained that [minor plaintiffs] apparent 'abnormality' was actually an injury"). *But cf. Friends University v. W.R. Grace & Co.,* 227 Kan. 559, 608 P.2d 936, 940 (1980) (plaintiff's failure to know exact scientific nature of roof problem until it retained independent expert did not toll statute of limitations; plaintiff knew roof was defective earlier when leaks occurred and had previously made several

Assuming plaintiff prevails in his contention that his claim did not accrue until early 1991 when the technology became available to determine whether Rabon was present in animal tissue, his claim would have been timely filed whether it was deemed filed on November 25, 1991, or on October 14, 1992, the date he filed his complaint in federal court. It is therefore unnecessary for this court to decide whether or not K.S.A. 60–518 applies.

7. Although the plaintiff brings his suit on the basis of breach of warranty in addition to tort theories, the statute of limitations in K.S.A. 1992 Supp. 60–513 applies to the extent his claim sounds in tort and he claims tort-like damages such as property damage and personal injury. *See Cowan v. Lederle Laboratories,* 604 F.Supp. 438, 441 (D.Kan.1985) (citing *Grey v. Bradford–White Corp.,* 581 F.Supp. 725, 728 (D.Kan. 1984)); *cf. Winchester v. Lester's of Minnesota, Inc.,* 983 F.2d 992, 994–95 (10th Cir.1993) (losses claimed by plaintiffs for hog illness due to defective ventilation system in hog house built by defendant characterized as consequential damages for breach of contract; hence statute of limitations for contract actions applies), *rev'g* No. 88–2586–V, 1990 W.L. 252067, at *2–3 (D.Kan. Nov. 15, 1990) (two-year tort statute of limitations applies to the extent of claims for property damage to plaintiffs' hogs). Further, the doctrines of fraudulent concealment and equitable estoppel have been held to toll the statute of limitations for contract claims. *See Zurn Con-*

*structors, Inc. v. B.F. Goodrich Co.,* 746 F.Supp. 1051, 1055–56 (D.Kan.1990); *Hustead v. Bendix Corp.,* 233 Kan. 870, 666 P.2d 1175, 1178 (1983) (equitable estoppel); *Bowen v. Westerhaus,* 224 Kan. 42, 578 P.2d 1102, 1107 (1977) (equitable estoppel). In this case, plaintiff's complaint alleges misrepresentation and estoppel to assert the statute of limitations. In its summary judgment motion, defendant Feed Specialties does not contend that plaintiff's breach of warranty claim is barred by the statute of limitations in K.S.A. 84–2–725.

However, the court rejects plaintiff's contention that misrepresentation or concealment constitutes a statutory exception to the 10–year statute of repose. Plaintiff's argument relies upon K.S.A. 1992 Supp. 60–3303(b)(2)(B). However, that provision explicitly applies only to the 10–year presumptive statute of repose running from the date of delivery of a product alleged to have caused harm after its useful safe life has expired, which is codified in K.S.A. 1992 Supp. 60–3303(b)(1). The subsection cited by the plaintiff has no application to this case, which relies upon the latent disease exception to the 10–year statute of repose codified in K.S.A. 60–513(b). *See* K.S.A. 1992 Supp. 60–3303(d)(1) (referring to 10–year limitation defined in K.S.A. 60–513 and amendments thereto). K.S.A. 1992 Supp. 60–3303(d), the statute of limitations for latent disease claims, does not include a provision comparable to 60–3303(b)(2)(B).

nonjudicial demands that the defendant remedy the problem).

The date the plaintiff could have reasonably ascertained he suffered substantial injury *caused by the defendant* is a material issue of fact which should be resolved by the jury. *See Gilger v. Lee Construction,* 820 P.2d at 401; *Hecht v. First Nat'l Bank & Trust Co.,* 208 Kan. 84, 490 P.2d 649, 654–56 (1971); *Miller v. Beech Aircraft Corp.,* 204 Kan. 184, 460 P.2d 535, 540 (1969); *see also Hatfield v. Burlington Northern R.R. Co.,* 747 F.Supp. 634, 639 (D.Kan.1990) (denying third-party defendant's motion for summary judgment where third-party plaintiff presented unrefuted evidence that it did not know the cause of its alleged injury until more than two years after the accident); *Cowan v. Lederle Laboratories,* 604 F.Supp. at 443 (jury question when plaintiffs could have reasonably ascertained that discoloration of teeth was related to ingestion of tetracycline).[8]

In this case, based upon the uncontroverted facts, plaintiff first incurred substantial injury no later than October 30, 1981, when one of his Holstein cows died. It is uncontroverted that plaintiff was aware of the injury on that date. However, plaintiff contends he was not aware of the *cause of the injury* until April 1991, when laboratory experts first determined the presence of Rabon in the tissue samples he submitted.

Even if plaintiff could not have reasonably ascertained the fact of injury sooner, defendant relies upon the last clause of K.S.A. 1992 Supp. 60–513(b), which reads:

but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

It is undisputed that the act or acts giving rise to this cause of action could not have occurred later than November 1, 1981, when plaintiff ceased feeding Rabon-containing products to his dairy cattle. Therefore, defendant argues that plaintiff's claim is cut off by the 10–year statute of repose quoted above. *See Harding v. Wall Products, Inc.,* 250 Kan. 655, 831 P.2d 958, 967–68 (1992) (10–year provision in K.S.A. 1992 Supp. 60–513(b) is a statute of repose, because it bars a cause of action after the 10–year period even though the action may not yet have accrued). The court agrees, on the basis of K.S.A. 1992 Supp. 60–513(b) alone, that plaintiff's tort claim would be time-barred by the statute of repose, even assuming plaintiff could not have reasonably ascertained the cause of the injury prior to the end of the 10–year period. *See Dobson v. Larkin Homes, Inc.,* 251 Kan. 50, 832 P.2d 345, 346–47 (1992) (1987 amendment to K.S.A. 60–513(b) was intended to be a statute of repose, imposing an absolute limit of 10 years from the occurrence of the act giving rise to the cause of action).

Plaintiff, however, relies upon K.S.A. 1992 Supp. 60–3303(d), which became effective May 24, 1990. The statute reads as follows:

(d)(1) In a product liability claim against the product seller, the ten-year limitation, as defined in K.S.A. 60–513, and amendments thereto, shall not apply to the time to discover a disease which is latent caused by exposure to a harmful material, in which event the action shall be deemed to have accrued when the disease and such

---

8. The court acknowledges the recent decision of the Tenth Circuit Court of Appeals in *Winchester v. Lester's of Minnesota, Inc.,* 983 F.2d 992, 994 (10th Cir.1993) (applying Kansas law). Plaintiffs sought damages from the defendant in part for the ailments of their hogs allegedly caused by a defective ventilation system in their newly constructed hog house. The district court granted the defendant partial summary judgment, rejecting plaintiffs' argument that they were not aware of the cause of their injury until a date within two years prior to the filing of their claim. *See Winchester v. Lester's of Minnesota, Inc.,* No. 88–2586–V, 1990 W.L. 252067, at *4 (D.Kan. Nov. 15, 1990), *rev'd on other grounds,* 983 F.2d 992 (10th Cir.1993). The district court determined that the evidence showed that plaintiffs could have reasonably ascertained the fact of injury, including its cause, more than two years before they brought suit. The Court of Appeals' statement summarily upholding the district court on this point is *obiter dictum* since the court held that the contract statute of limitations applied to plaintiffs' claims. This court assumes that the evidence before the district court was so one-sided that it presented no genuine issue of fact precluding summary judgment on the basis of the statute of limitations for tort actions. We do not find the evidence so one-sided in this case to warrant a determination of the issue as a matter of law.

disease's cause have been made known to the person or at the point the person should have been aware of the disease and such disease's cause.

(2) The term "harmful material" means ... any chemical substances commonly known as asbestos, dioxins, or polychlorinated biphenyls, whether alone or as part of any product, or any substance which is determined to present an unreasonable risk of injury to health or the environment by the United States environmental protection agency pursuant to the federal toxic substances control act, 15 U.S.C. § 2601 *et seq.*, or the state of Kansas, and because of such risk is regulated by the state or the environmental protection agency.

The Kansas Product Liability Act defines the term "product seller" to include a manufacturer, wholesaler, distributor, or retailer. *See* K.S.A. 60–3302(a). Hence both defendants in this case are product sellers for purposes of applying the statute.

Defendant contends that the plaintiff is not entitled to rely upon this statute because (1) the death of cattle is not latent, and (2) plaintiff was convinced all along that Rabon was the cause, and knowledge for purposes of the statute does not depend on the availability of scientific testing instruments or techniques. Defendant argues that the statute was intended to cover industrial exposure situations in which the resulting disease becomes obvious only after years of exposure or after a lengthy latency period. Essentially, the defendant argues that the fact that plaintiff may not have known to some level of scientific certainty that Rabon was the cause of his cattle's death does not permit him to take advantage of the exception in K.S.A. 1992 Supp. 60–3303(d) to the 10–year statute of repose.[9]

While the court cannot dispute the movant's argument that the death of a cow or bull is not latent, defendant's argument misses the mark. The undisputed fact that plaintiff lost 98 head of cattle between May 1979, and July 15, 1986, a period of more than seven years, allegedly due to the cattle's ingestion of Rabon between April 1979 and November 1, 1981, supports an inference that a latent disease was the cause of the cattle's death and hence the cause of plaintiff's property injuries and other alleged losses. Defendant does not contend that the cattle exhibited patent symptoms of disease immediately after ingesting the Rabon, which may have undermined plaintiff's implicit contention that the cattle died as a result of a latent disease.[10] If the court accepts the plaintiff's uncontroverted allegations as true, as it must at this stage of the proceedings, there is simply no merit to defendant's contention that plaintiff has not asserted facts sufficient to allege that his losses were the result of a latent disease.

More to the point is defendant's argument that plaintiff need not have proof to a degree of scientific certainty before his claim accrues under K.S.A. 1992 Supp. 60–3303(d). The defendant essentially argues that the plaintiff may not rely on the latent disease statute to save his belated claim just because scientific proof that Rabon was present in the tissue was unavailable, since he suspected Rabon was the cause of death all along.

The previously cited cases make clear that for purposes of K.S.A. 1992 Supp. 60–513(b), the determination of when the plaintiff could have reasonably ascertained his injury and the injury's cause is a question of fact for the jury. Similarly, whether plaintiff is entitled to rely on the special provision for latent disease cases is dependent on the resolution of questions of fact. Initially, it is an issue of fact whether any of the time elapsed between the death of plaintiff's cattle and April 1991, when the experts first reported the presence of Rabon in his tissue samples, constitutes "time to discover a disease which is latent."

---

9. The defendant does not contend that the plaintiff may not rely on the 1990 enactment because the death of his cattle, and his other claimed damages, predated the statute. The Kansas Supreme Court has held that the statute of limitations in effect at the time an action is filed applies. *See Dobson v. Larkin Homes, Inc.*, 251 Kan. 50, 832 P.2d 345, 347 (1992) (citing *Har-*

*ding v. Wall Products, Inc.*, 831 P.2d 958, Syl. ¶ 1 (Kan.1992)).

10. Had the defendant submitted such evidence, the issue of whether the disease was latent or patent would be a genuine issue of material fact, thereby precluding summary judgment.

If this threshold issue is resolved in favor of the plaintiff, it is likewise an issue of fact "when the disease and such disease's cause have been made known to the person, or the point the person should have been aware of the disease and such disease's cause."[11] Whether plaintiff could have reasonably ascertained that Rabon was the cause of his damages earlier than March 1991, is a jury issue. From the evidence advanced by the plaintiff at this early stage of the proceedings, a reasonable jury could determine that plaintiff had insufficient evidence to support a claim that Rabon was the cause of his damages until April or May 1991. If so, his claim did not accrue until then pursuant to K.S.A. 1992 Supp. 60–3303(d).

The court notes that whether Rabon constitutes a "harmful material" for purposes of K.S.A. 1992 Supp. 60–3303(d)(2) appears to be a mixed question of law and fact. However, in its answer defendant Feed Specialties admitted that tetrachlorvinphos (the chemical equivalent of Rabon) is a chemical substance regulated by the Environmental Protection Agency and the state of Kansas. Feed Specialties does not raise the issue in its motion for summary judgment. Hence, there is no apparent dispute between these parties that Rabon is a harmful material for purposes of the latent disease provision.[12]

The court finds that the plaintiff has submitted sufficient evidence to withstand the motion of defendant Feed Specialties for summary judgment. Having determined that genuine issues of material fact remain with regard to plaintiff's reliance on K.S.A. 1991 Supp. 60–3303(d), the court cannot determine as a matter of law that the plaintiff's claim is time-barred.

IT IS BY THE COURT THEREFORE ORDERED that the motion of defendant Feed Specialties for summary judgment (Doc. 14) is hereby denied.

---

11. While the first clause of 60–3303(d)(1) appears to carve out an exception to the 10-year statute of repose in 60–513(b), the last clause provides the factors for determining when such a cause of action accrues, which in turn triggers the running of the two-year statute of limitations in 60–513(a). *See* K.S.A. 60–510 (action may not be commenced until after cause of action has accrued). Since 60–3303(d) is the more specific statute of limitations, it controls over 60–513(b) for latent disease claims that otherwise meet the criteria of 60–3303(d)(1) and (2). *See Harding v. Wall Products*, 831 P.2d at 963; *cf. Baumann v. Excel Industries, Inc.*, 845 P.2d 65 (Kan.App. 1993) (60–513(b) does not control over 60–3303(b), which is the more specific statute).

12. On March 9, 1993, defendant Shell Oil Company filed a motion for summary judgment advancing many of the same arguments raised by Feed Specialties. In addition, however, Shell Oil Company contends that Rabon is not a "harmful material" as defined by K.S.A. 1991 Supp. 60–3303(d)(2). Because the motion of defendant Shell Oil Company presents an issue not raised in the motion of defendant Feed Specialties, the court will defer action on Shell Oil Company's motion until the plaintiff has had an opportunity to respond pursuant to D.Kan. Rule 206(c).