**Charles KOCH, Plaintiff,**

v.

**SHELL OIL COMPANY and Feed Specialties Co., Inc., Defendants.**

**Civ. A. No. 92–4239–DES.**

United States District Court, D. Kansas.

May 13, 1993.

Ronald R. Hein, Stephen P. Weir, Hein, Ebert and Rosen, Chtd., Topeka, KS, for plaintiff.

Hal D. Meltzer, Turner & Boisseau, Chartered, Overland Park, KS, for defendant Shell Oil Co.

James P. Nordstrom, Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendant Feed Specialties Co., Inc.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the motion of defendant Shell Oil Company for

summary judgment.[1] Plaintiff claims that a number of his cattle became diseased and died as a result of ingesting the oral larvacide tetrachlorvinphos, commonly known by its trade name Rabon Oral Larvacide, or R.O.L. (hereinafter "Rabon"). He also claims personal injury as a result of his exposure to the substance. Defendant Shell Oil Company manufactures Rabon. Defendant Feed Specialties Co., Inc. ("Feed Specialties"), a livestock feed producer, distributed a feed Specialties"), a livestock feed producer, distributed a feed mixture containing Rabon to the farm co-op where plaintiff purchased feed ingredients for his cattle.

The essential facts underlying plaintiff's claim, which are virtually undisputed by defendant Shell Oil Company for purposes of summary judgment, are set out in full in the previous order of this court filed on March 18, 1993. *See Koch v. Shell Oil Co.*, 815 F.Supp. 1434 (D.Kan.1993). The court's prior order denied the separate summary judgment motion of defendant Feed Specialties. On March 9, 1993, defendant Shell Oil Company ("Shell Oil") filed the summary judgment motion presently pending before the court, raising many of the same arguments that were advanced by Feed Specialties in its summary judgment motion. In addition, defendant Shell Oil raises one argument not previously asserted by Feed Specialties and which therefore was not addressed by this court. Specifically, Shell Oil argues as a matter of law that Rabon does not fall within the statutory definition of "harmful material" for purposes of triggering the latent disease exception to the ten-year statute of repose codified in K.S.A. 60–513(b). *See* K.S.A.1992 Supp. 60–3303(d)(1), (2).

### Summary Judgment Guidelines

Under Fed.R.Civ.P. 56, the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party must go beyond the pleadings and designate specific facts, by affidavits, depositions, answers to interrogatories, and admissions on file, showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105

---

1. Defendant Shell Oil Company has also filed a motion seeking a hearing on its summary judgment motion. D.Kan.Rule 206(d) provides that such requests are granted only at the discretion of the court. Because the court has determined that oral argument would not be helpful in resolving the issues, the motion has been determined on the basis of the written memoranda of the parties. The defendant's motion seeking a hearing is therefore denied.

S.Ct. 1187, 84 L.Ed.2d 334 (1985). However, a mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### Analysis

Shell Oil first argues that plaintiff's claims are barred by K.S.A. 60–513, reasoning that the last possible act that could have given rise to the claims occurred ·no earlier than October, 1981, more than ten years before the complaint was filed. As the court has previously held in denying summary judgment to Feed Specialties, plaintiff's claims would be time-barred on the basis of the ten-year statute of repose in K.S.A. 60–513(b), if that statute applies to plaintiff's claims. *See Koch v. Shell Oil Co.,* 815 F.Supp. at 1439.

The primary argument advanced by Shell Oil, which Feed Specialties did not raise in its summary judgment motion, is that the latent disease exception to the normal ten-year statute of repose for tort claims cannot be applied in this case to save plaintiff's claims from the time-bar of K.S.A. 60–513(b). Specifically, Shell Oil argues strenuously that as a matter of law Rabon does not fall within the statutory definition of "harmful material" in K.S.A.1992 Supp. 60–3303(d)(2). If Rabon is not a harmful material, Shell Oil argues, the plaintiff cannot invoke the latent disease exception because K.S.A. 60–3303(d)(1), by its explicit terms, applies only to latent diseases caused by exposure to a "harmful material." [2]

The statutory definition upon which Shell Oil relies reads as follows:

(2) The term "harmful material" means silicone gel breast implants, which were implanted prior to July 1, 1992; any chemical substances commonly known as· asbestos, dioxins, polychlorinated biphenyls, whether alone or as a part of any product, or any substance which is determined to present an unreasonable risk of injury to health or the environment by the United States environmental protection agency pursuant to the federal toxic substances control act, 15 U.S.C. Section 2601 *et seq.,* or the state of Kansas, and because of such risk is regulated by the state or the environmental protection agency.

K.S.A.1992 Supp. 60–3303(d)(2). [3]

Plaintiff does not contend that Rabon is one of the specific chemical substances listed in the statutory definition of "harmful· material." However, plaintiff contends that Rabon is nevertheless a harmful material that is regulated by the state and federal government, and that the statute should be construed broadly to give effect to its remedial purpose.

■■■■ As the plaintiff contends, a legislative act remedial in nature is to be liberally construed to effectuate the purpose for which it was enacted. *See, e.g., Smith v. Marshall,* 225 Kan. 70, 587 P.2d 320, Syl. ¶ 1 (Kan. 1978); *Lawrence Preservation Alliance, Inc. v. Allen Realty, Inc.,* 16 Kan.App.2d 93, 819 P.2d 138, 145 (1991), *rev. denied,* 16 Kan. App.2d 93, 819 P.2d 138 (1992). Statutes of limitation are considered remedial 'rather than substantive, because they bar only the remedy and not the right. *Strecker v. Wilkinson,* 220 Kan. 292, 552 P.2d 979, 984 (1976). The court notes, however, that K.S.A. 60–3303(d) is not a statute of limitations. Instead, it carves out a limited exception to the general ten-year statute of repose for tort actions.[4] For cases falling within the

---

**2.** The latent disease exception in K.S.A.1992 Supp. 60–3303(d)(1) reads as follows:

In a product liability claim against the product seller, the ten-year limitation, as defined in K.S.A. 60–513, and amendments thereto, shall not apply to the time to discover a disease which is latent caused by exposure to a harmful material, in which event the action shall be deemed to have accrued when the disease and such disease's cause have been made known to the person or at the point the person should have been aware of the disease and such disease's cause.

**3.** The clause including breast implants in the definition of "harmful material" was added by the 1992 Kansas Legislature, presumably in response to concerns raised at that time regarding latent health problems that had been linked to silicone gel breast implants. As originally enacted in 1990, the statutory definition of "harmful material" was limited to certain kinds of chemical substances.

**4.** Statutes of limitation are to be distinguished from statutes of repose. While statutes of limitation bar a claim after a time period running from the date the cause of action accrues, statutes of

exception, K.S.A.1992 Supp. 60–3303(d)(1) provides a unique rule for determining when the claim *accrues,* not when the claim is cut off. *Compare* K.S.A.1992 Supp. 60–3303(d)(1) *with* K.S.A.1992 Supp. 60–513(a), (b)(1). Therefore, the court cannot agree with the plaintiff's contention that K.S.A. 60–3303(d) is remedial legislation that must be construed broadly to effectuate its purpose. Rather, the statute of repose at issue here is substantive legislation. *See Waller v. Pittsburgh Corning Corp.,* 946 F.2d 1514, 1515 (10th Cir.1991); *Menne v. Celotex Corp.,* 722 F.Supp. 662, 666 (D.Kan.1989).

■ .Furthermore, K.S.A.1992 Supp. 60–3303(d)(2) is. an exception to the general statute of repose for tort actions in K.S.A. 60–513(b). As such, it must be strictly or narrowly construed, and anyone seeking relief from operation of the general statute bears the burden of proving that he comes within the exception. *Jackson v. City of Kansas City,* 235 Kan. 278, 680 P.2d 877, 886 (1984); *McGinnis v. Kansas City Power and Light Co.,* 231 Kan. 672, 647 P.2d 1313, 1319 (1982); *Broadhurst Foundation v. New Hope Baptist Soc.,* 194 Kan. 40, 397 P.2d 360, 365 (1964). In construing a statutory exception, any doubt should be resolved against its application and in favor of the general rule. *See Jackson,* 680 P.2d at 886; *Broadhurst,* 397 P.2d at 365.

The court agrees that the resolution of Shell Oil's motion for summary judgment depends upon this court's interpretation of the latent disease exception enacted by the 1990 Legislature. In order to interpret the statute, the court must try to ascertain as best it can that amorphous and ethereal concept known as legislative intent. *See State v. Hill,* 189 Kan. 403, 369 P.2d 365, 370 (1962) (fundamental rule of statutory construction is to ascertain lawmakers' intent in order that the legislature's true meaning may be determined); *see also Connecticut National Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (canons of construction help courts determine the meaning of legislation). In determining legislative intent, we are not limited to consideration of the language used in the statute, but may also consider the historical background of the statute, the circumstances attending its passage, the purpose it was to accomplish, and the effect the statute may have under various constructions suggested. *Steele v. City of Wichita,* 250 Kan. 524, 826 P.2d 1380, 1385 (1992). We may also consider the causes which impel the statute's adoption. *Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1297 (10th Cir.1986) (citing *Petition of City of Moran,* 238 Kan. 513, 713 P.2d 451, 456 (1986)); *Hughes v. Inland Container Corp.,* 247 Kan. 407, 799 P.2d 1011, 1017 (1990).

■ We are mindful of the cardinal rule that the courts must presume that a legislature says in a statute what it means and means in a statute what it says. *See Connecticut National Bank v. Germain,* —— U.S. at ——, 112 S.Ct. at 1149 (citations omitted). Further, when the words of a statute are unambiguous, then the judicial inquiry as to legislative intent begins and ends with the language of the statute. *Id.;* · *see Hughes v. Inland Container Corp.,* 799 P.2d at 1017 (when the statute is plain and unambiguous, court must give effect to the intention of the legislature as expressed rather than what the law should or should not be).

■ While this court does not consider the language of 60–3303(d)(2) ambiguous, the legislature's meaning nevertheless is not clear from simply reading the statutory language. When there is uncertainty about the meaning of the statute, it is prudent to exam-

repose bar a claim after a period triggered by an arbitrary event unrelated to the accrual of the cause of action. *Alexander v. Beech Aircraft Corp.,* 952 F.2d 1215, 1218 (10th Cir.1991); *Waller v. Pittsburgh Corning Corp.,* 946 F.2d 1514, 1515 n. 1 (10th Cir.1991). Because a statute of repose may preclude a claim even before it ever accrues, it affects the right itself rather than merely the remedy. *See* K.S.A. 60–510 (civil

actions may be commenced only after they have accrued). A statute of repose is therefore more in the nature of a substantive statute than a remedial one. *See Menne v. Celotex Corp.,* 722 F.Supp. 662, 668 (D.Kan.1989) (ten-year limitation in K.S.A. 60–513(b) is a statute of repose and hence substantive rather than procedural in nature).

ine its legislative history.[5] *Connecticut National Bank v. Germain,* — U.S. at —, 112 S.Ct. at 1150 (Stevens, J., concurring) (quoting *Wisconsin Public Intervenor v. Mortier,* — U.S. —, — n. 4, 111 S.Ct. 2476, 2485 n. 4, 115 L.Ed.2d 532 (1991) (" '[C]ommon sense suggests that inquiry benefits from reviewing additional information rather than ignoring it' ")); *see Burlington Northern R. Co. v. Lennen,* 715 F.2d 494, 497 (10th Cir.1983) (in construing a statute that is not explicit, a federal court may properly consider legislative history predecessors to the bill ultimately enacted), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984). *But see Burlington Northern R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987) (legislative history can be a legitimate guide to statutory purpose obscured by ambiguity, but statutory language must ordinarily be regarded as conclusive).

 Statutory interpretation is a question of law for the court to resolve. *Martindale v. Robert T. Tenny, M.D., P.A.,* 250 Kan. 621, 829 P.2d 561, 565 (1992) (citations omitted); *see Hiatt Grain & Feed, Inc., v. Bergland,* 602 F.2d 929, 934 (10th Cir. 1979) (courts are the final authority on issues of statutory construction), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980). The Kansas rules of statutory construction provide that a statute is not to be arbitrarily construed according to its strict letter, but must be given a construction that will advance the sense and meaning fairly deducible from the context. *See Mahone v. Mahone,* 213 Kan. 346, 517 P.2d 131, 134 (1973); *Mendenhall v. Roberts,* 17 Kan. App.2d 34, 831 P.2d 568, 574, *rev. denied,* 17 Kan.App.2d 34, 831 P.2d 568 (1992). In construing statutes, the legislative intent is to be determined by considering and construing together all parts of the statute in pari materia, and the courts must not consider only an isolated part or parts of an act. *Board of County Comm'rs of Johnson County v. Greenhaw,* 241 Kan. 119, 734 P.2d 1125, 1131 (1987).

With these rules of statutory construction in mind, we turn now to the interpretation of the statute at issue here. The 1990 enactment of K.S.A.1992 Supp. 60–3303(d) was a legislative response to the decision of the Kansas Supreme Court in *Tomlinson v. Celotex,* 244 Kan. 474, 770 P.2d 825 (1989), *overruled by Gilger v. Lee Construction, Inc.,* 249 Kan. 307, 820 P.2d 390, 398 (1991). In *Tomlinson,* the plaintiff claimed his personal injuries were caused by exposure to asbestos that had been manufactured, sold, or distributed by the defendants. His last exposure to asbestos occurred in 1971, but he did not ascertain his injuries until 1986. The following certified question was addressed to the Kansas Supreme Court: Does the ten-year limitation of K.S.A. 60–513(b) apply to claims involving latent diseases and, if so, is it constitutional as applied to this plaintiff? The court answered both parts of the question in the affirmative, holding that the ten-year statute of repose in 60–513(b) was triggered on the date of the plaintiff's last exposure to asbestos, and not from the date his latent disease, allegedly caused by the asbestos exposure, became reasonably ascertainable.[6]

In response, a bill introduced in the 1990 Legislature was amended to explicitly except certain latent disease cases from the ten-year repose period in 60–513(b) and to revive certain causes of action that would otherwise have been barred by the Kansas Supreme Court's interpretation in *Tomlinson.*[7] *See*

---

5. In this case, the court notes that a careful review of the legislative history of the enactment, urged by both plaintiff and Shell Oil, simply reinforces the conclusion suggested by the language of the statute itself that the legislature intended to carve out only a narrow exception to K.S.A. 60–513(b).

6. *Tomlinson* was subsequently overruled by the Kansas Supreme court in *Gilger v. Lee Construction, Inc.,* 249 Kan. 307, 820 P.2d 390, 398 (1991), to the extent *Tomlinson* held that the ten-year limitation in 60–513(b) commenced at the

time of Tomlinson's last exposure to asbestos, rather than the date his substantial injury became ascertainable. Both *Tomlinson* and *Gilger* interpreted and applied K.S.A. 60–513(b) as it was worded prior to an amendment enacted by the 1987 Legislature. The 1987 version of the statute applies to the instant case.

7. The revival provision was enacted as K.S.A. 60–3303(e). In *Waller v. Pittsburgh Corning Corp.,* 946 F.2d 1514, 1515 (10th Cir.1991), the Tenth Circuit affirmed the district court's decision holding that 60–3303(e) was an unconstitu-

*Waller v. Pittsburgh Corning Corp.,* 742 F.Supp. 581, 583 (D.Kan.1990) (1990 amendments were in obvious response to *Tomlinson*), *aff'd,* 946 F.2d 1514 (10th Cir.1991); *Harding v. K.C. Wall Products, Inc.,* 250 Kan. 655, 831 P.2d 958, 969 (1992) (*Tomlinson* remained the law until the legislature enacted K.S.A.1991 Supp. 60–3303(e) on May 24, 1990); *see also* 1990 H.B. 2689. As amended by the House Judiciary Committee, the sponsor of the legislation, the bill would have amended the general statute of repose for tort actions in K.S.A. 60–513(b) to provide that:

> The 10–year limitation shall not apply to: ... (2) the time to discover a disease which is latent caused by exposure to a harmful material, in which event the action shall be deemed to have accrued when the disease and such disease's cause have been made known to the person or at the point the person should have been aware of the disease and such disease's cause.

The Senate deleted the proposed amendment to 60–513(b) and instead proposed a similar amendment to K.S.A. 60–3303, a subdivision of the Kansas Products Liability Act. The bill was further amended in conference committee. The final enactment adopted the Senate's proposal to amend the Products Liability Act rather than the general statute of limitations for tort actions in K.S.A. 60–513.

The fact that the legislature decided to make the amendment part of the Kansas Products Liability Act indicates a clear intent to limit the exception to a specific class of tort actions—product liability claims.[8] *See Harding v. Wall Products,* 831 P.2d at 970 (it was appropriate for H.B. 2689 to amend the Kansas Products Liability Act, since the bill governs time of accrual of products liability claims arising from latent diseases caused by specific harmful materials). Had the House version of the bill been enacted, the exceptional attempt to remove vested rights on behalf of defendants. *But see Harding v. Wall Products, Inc.,* 250 Kan. 655, 831 P.2d 958, 969 (1992) (60–3303(e) violates neither the Kansas nor the United States Constitutions). None of the parties contend that 60–3303(e) applies to this case.

tion would have been considerably broader. The latent disease at issue could have been caused by any harmful material, not just those that are "products." Further, the House version would have allowed an action to be brought beyond the normal ten-year bar against any defendant for latent disease caused by exposure to any harmful material. The Senate version, in contrast, substantially limited the exception by restricting it to claims against a "product manufacturer," a term specifically defined in K.S.A.1992 Supp. 60–3302(b), and making the new language part of the Products Liability Act rather than K.S.A. 60–513, the general statute of limitations for tort actions.

The conference committee broadened the exception somewhat from the Senate version by deleting the term "manufacturer" and replacing it with "product seller," a term defined in K.S.A.1992 Supp. 60–3302(a) to include manufacturers as well as distributers and retailers. However, the conference committee also added a new subsection defining the term "harmful material."

Under the House version of the bill, whether a particular substance qualifies as a "harmful material" would have been an issue of fact, because that term was left undefined. However, the conference committee added what is now K.S.A.1992 Supp. 60–3303(d)(2) to explicitly define the term as a matter of law. While the determination whether Rabon qualifies as a "harmful material" may depend upon certain preliminary facts, for example, whether either the state or the federal EPA has determined that it presents an unreasonable risk of injury to health or the environment, the ultimate determination whether Rabon is a "harmful material" under the statute is a matter of statutory interpretation, and therefore a question of law.[9]

---

[8] This is consistent with the legislature's purpose to respond to *Tomlinson* by creating an exception for latent disease cases such as asbestosis.

*See* Testimony of Kansas Trial Lawyers Association on 1990 H.B. 2689, House Judiciary Committee, January 31, 1990, at p. 4.

[9] This court observed in denying the summary judgment motion of Feed Specialties, which did not raise the issue, that the question whether a substance is a "harmful material" appears to be a mixed question of law and fact. *See Koch v. Shell Oil Co.,* 815 F.Supp. at 1441.

First, the court must decide whether Rabon "is determined to present an unreasonable risk of injury to health or the environment by the United States environmental protection agency pursuant to the federal toxic substances control act, 15 U.S.C. § 2601 *et seq.* . . . ." We agree with the defendant's argument that for purposes of this litigation, Rabon was used as a pesticide, and plaintiff appears to concede this point. The Federal Toxic Substances Control Act authorizes the EPA to regulate certain "chemical substances" and mixtures "which present an unreasonable risk of injury to health or the environment. . . ." *See* 15 U.S.C. § 2601(b)(2). However, the Act expressly excludes from the definition of chemical substance "any pesticide (as defined in the Federal Insecticide, Fungicide, and Rodenticide Act) when manufactured, processed, or distributed in commerce for use as a pesticide. . . ." *See* 15 U.S.C. § 2602(2)(B)(ii). Hence, if Rabon is a pesticide as defined in the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), then the Federal Toxic Substances Control Act (TOSCA) provides no authority to the EPA to regulate it or to declare it a substance posing an unreasonable risk to health or the environment.

FIFRA defines "pesticide" to include "(1) any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest." 7 U.S.C. § 136(u). "Pest" is defined to include insects, and "insects" includes flies. 7 U.S.C. §§ 136(o), (t). It is undisputed that Rabon is an oral larvacide used for the purpose of controlling fly larvae in manure. *See Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1182 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). Therefore, as a matter of law, Rabon is a pesticide for purposes of FIFRA. It follows that Rabon is not a "chemical substance" for purposes of TOSCA, which explicitly excludes pesticides as

that term is defined by FIFRA. Hence, Rabon has *not* been determined to present an unreasonable risk by the EPA pursuant to TOSCA.[10]

This does not conclude our analysis, however. A chemical substance may also qualify as a "harmful material" under K.S.A.1992 Supp. 60–3303(d)(2) if it "is determined to present an unreasonable risk of injury to health or the environment by . . . the state of Kansas, and because of such risk is regulated by the state . . . ."

Plaintiff contends that the State of Kansas regulates Rabon under the Kansas Emergency Planning and Community Right-to-Know Act, K.S.A. 65–5701 *et seq.* This legislation, enacted in 1987, established a State Emergency Response Commission to carry out the requirements of the Federal Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. § 11001 *et seq.* [FEPCRA]. *See* K.S.A. 65–5702, –5703. The state Act is "for the purpose of providing the coordination of state agency activities relating to: (1) chemical emergency training, preparedness, and response; and (2) chemical release reporting and prevention, transportation, manufacture, storage, handling, and use." K.S.A. 65–5703(a). The Secretary of Health and Environment is authorized by K.S.A. 65–5704 to, among other things, "establish a list of Kansas reportable chemicals," K.S.A. 65–5704(c), and the Secretary may establish more stringent reporting thresholds for reportable chemicals than does the federal government under the federal Act. Further, K.S.A. 65–5707 incorporates certain sections of FEPCRA as the law of Kansas. The rules and regulations adopted by the Secretary of Health and Environment to administer the Kansas Act fully adopt 40 C.F.R. Parts 300 and 355, as they were in effect on July 1, 1987, and 40 C.F.R. Part 370, as it was in effect on October 15, 1987,

---

10. Although plaintiff also argues that Rabon is regulated by federal agencies, including EPA, under the authority of several other federal statutes, the definition of "harmful material" recognizes only TOSCA as the authority for EPA regulation. To hold otherwise would require the court to read the statutory citation of TOSCA out of the statute entirely, with the effect of broadening the scope of the exception. The court is not

inclined to do so, since the latent disease exception to K.S.A. 60–513(b) is to be narrowly construed. Furthermore, the maxim *expressio unius est exclusio alterius* dictates that the mention of one thing implies the exclusion of others. Black's Law Dictionary 581 (6th ed. 1990); *see State v. Wood,* 231 Kan. 699, 647 P.2d 1327, 1330 (1982).

as if they were state regulations. *See* K.A.R. 28–65–1.

The plaintiff correctly contends that the active ingredient in Rabon, tetrachlorvinphos, is listed as a toxic chemical in 40 C.F.R. § 372.65. However, the listing of chemicals in that particular federal regulation has *not* been incorporated by reference by either the Kansas statute or the Kansas regulations cited by the plaintiff. The fact that tetrachlorvinphos is listed in 40 C.F.R. § 372.65 simply means it has been deemed a "toxic chemical" for purposes of the reporting and notification requirements of 40 C.F.R. Part 372. Although Kansas law has explicitly incorporated the 1987 versions of 40 C.F.R. Parts 300, 355, and 370, the state has not adopted 40 C.F.R. Part 372 or its listing of toxic chemicals.[11]

The court notes that the notification requirements of FEPCRA do not apply to the application of pesticide products registered under FIFRA, or to the handling and storage of such a product by an agricultural worker. *See* 42 U.S.C. § 9603(c). For purposes of both 40 C.F.R. Parts 355 and 370, the term "hazardous chemical" is defined in 29 C.F.R. § 1910.1200(c) to mean "any chemical which is a physical hazard or a health hazard." *See* 40 C.F.R. §§ 355.20 and 370.2. However, both of the definitional sections for Parts 355 and 370 explicitly exclude from the "hazardous chemical" definition "any sub-

stance to the extent it is used in routine agricultural operations...." Hence, the reporting and notification requirements of 40 C.F.R. Parts 355 and 370 do not apply to Rabon to the extent it is used, as it was by the plaintiff in this case, in routine agricultural operations.[12]

Nor does Rabon fall within the definition of "hazardous substance" for purposes of 40 C.F.R. Part 300. *See* 40 C.F.R. § 300.5; *see also* 42 U.S.C. § 9601(14) (statutory definition). That section of the regulations includes in the definition any substance designated as an "imminently hazardous chemical substance or mixture with respect to which the EPA Administrator has taken action pursuant to section 7 of the Toxic Substances Control Act." As the court has already concluded, however, TOSCA explicitly excludes pesticides such as Rabon.[13]

Plaintiff also contends that the state regulates Rabon pursuant to K.S.A. 2–2204 and K.A.R. 4–13–1.[14] Under the authority of the Agricultural Chemical Act of 1947, the Kansas Board of Agriculture regulates agricultural chemicals, including insecticides, and therefore regulates Rabon to the extent it is used for the purpose of controlling flies. *See* K.S.A. 2–2201 *et seq.* The Agricultural Chemical Act regulates the distribution, sale, and transportation of agricultural chemicals. Pursuant to K.S.A. 2–2205(a), the Secretary

---

11. The court notes that 40 C.F.R. Part 372 was not promulgated until 1988, after the enactment of the Kansas statute upon which plaintiff relies. While Part 372 was authorized by section 313 of Title III of the Superfund Amendments and Reauthorization Act of 1986, which in turn is referenced in K.A.R. 28–65–2(c), the Kansas regulations simply designate that reports required under section 313 of the federal Act must be submitted to the Kansas Department of Health and Environment. K.A.R. 28–65–3(a); *see* 40 C.F.R. § 372.30(a) (reports must be submitted to EPA and the State where manufacturing or processing facility is located). The Kansas regulations do not incorporate 40 C.F.R. Part 372 by reference.

12. Plaintiff contends that he used Rabon as a feed additive for his dairy cattle from April 1979 to October 1981. *See Koch v. Shell Oil Co.*, 815 F.Supp. at 1436.

13. 42 U.S.C. § 9602(a) permits EPA to designate, in addition to substances within the statutory definition of "hazardous substance" in

§ 9601(14), substances that *"may* present *substantial danger* to the public health or welfare or the environment...."* (Emphasis added). Even if EPA had exercised this authority to so designate tetrachlorvinphos or Rabon, however, the statute with which we are concerned in this case requires a determination that the substance *in fact* "presents an *unreasonable risk of injury* to health or the environment." (Emphasis added). The court is of the opinion that the determination of risk required by K.S.A.1992 Supp. 60–3303(d)(2) has a higher threshold than does 42 U.S.C. § 9602(a).

14. Plaintiff devotes only one short paragraph of his 25–page response brief to his argument in reliance on K.S.A. 2–2204 and K.A.R. 4–13–1. Hence, the court's analysis of this contention is somewhat abbreviated in comparison to the more lengthy analysis devoted to plaintiff's primary arguments.

of Agriculture is authorized "to determine whether agricultural chemicals are highly toxic to man," and if so classified, they may not be sold without an appropriate label. *See* K.S.A. 2–2203(a)(5). The Secretary is also authorized by K.S.A. 2–2205(b) to adopt rules and regulations to implement the Act, and by K.S.A. 2–2205(c) to cooperate with other states and the federal government relating to the regulation of agricultural chemicals.

The implementing regulations for the Kansas Agricultural Chemical Act appear in K.A.R. 4–1–1 *et seq.* Among other things, the regulations impose certain labelling requirements "if necessary to prevent injury to humans and other vertebrate animals, useful vegetation and useful invertebrate animals...." K.A.R. 4–1–5(a). However, contrary to plaintiff's argument, nothing in the implementing regulations indicates that Rabon has been determined by the Secretary to present an unreasonable risk of injury to health or the environment.

K.A.R. 4–13–1, also cited by the plaintiff, simply provides that any pesticide registered under the Agricultural Chemical Act, which is labelled as a restricted use pesticide by the EPA, shall be registered as a restricted use pesticide under the Kansas Pesticide Law, K.S.A. 2–2438a *et seq.* While Rabon falls within the statutory definition of "pesticide" in K.S.A. 2–2438a(n), plaintiff does not cite the court to any provision of the Kansas Pesticide Law, or any of its implementing regulations, which declares Rabon or tetrachlorvinphos to present an unreasonable risk of injury to health or the environment.

Nor does the plaintiff contend that the Kansas Secretary of Health and Environment has determined that Rabon poses a risk of injury to health or the environment under the broad powers delegated to that state official pursuant to K.S.A. 65–101 *et seq.*

In summary, while the Kansas statutes appear to authorize an administrative determination that Rabon presents an unreasonable risk of injury to health or the environment, plaintiff has presented no evidence that any state official has so far made such a determination. Hence, even though Rabon is regulated under Kansas law, plaintiff has not shown that its regulation is due to any determination by the state that it presents an unreasonable risk of injury to health or the environment. Both prerequisites must be met for Rabon to qualify under K.S.A.1992 Supp. 60–3303(d)(2) as a "harmful material."

### Conclusion

█ Plaintiff has failed to establish that the state of Kansas regulates Rabon under the Kansas Emergency Planning and Community Right-to-Know Act, when used as a pesticide in routine agricultural operations. Although the state does regulate pesticides and agricultural chemicals, including Rabon, plaintiff also has the burden under the statute of establishing that the state regulates Rabon because it "presents an unreasonable risk of injury to health or the environment," as determined by the state of Kansas. Plaintiff has not shown the existence of any material issue of fact with regard to whether the state has made such a determination. There is no evidence in the record before the court that the state has made an express determination that Rabon presents an unreasonable risk of injury to health or the environment. Since the court must construe narrowly the statutory exception upon which the plaintiff relies, the court will not infer such a determination from the fact that Rabon is regulated by the Secretary of Agriculture as a pesticide or agricultural chemical. As previously noted, the statute requires both (1) the determination of risk and (2) regulation because of such risk, in order to bring a claim within the latent disease exception in K.S.A.1992 Supp. 60–3303(d).

Nor has the plaintiff established that Rabon is regulated by the EPA under the authority of the federal legislation specifically cited in 60–3303(d)(2). The EPA does not regulate Rabon under TOSCA, since pesticides are explicitly excluded from the scope of that legislation. Consequently, the court must conclude as a matter of law that Rabon Oral Larvacide is not a "harmful material" as that term is narrowly defined in 65–3303(d)(2).

Because the court has determined as a matter of law that Rabon is not a "harmful material" for purposes of K.S.A.1992 Supp.

60–3303(d), plaintiff may not invoke the statutory exception to the ten-year statute of repose in K.S.A. 60–513(b). Plaintiff has not met his burden of proving that his claimed injuries fall within the statutory exception for latent disease claims. Hence, it is unnecessary for the court to address the other arguments advanced by the defendant in support of its motion for summary judgment.[15]

**IT IS BY THE COURT THEREFORE ORDERED** that the motion of defendant Shell Oil Company for oral argument (Doc. 44) is hereby denied.

**IT IS FURTHER ORDERED** that the motion for summary judgment of defendant Shell Oil Company (Doc. 42) is hereby granted.

---

**15.** All of the other issues raised by defendant Shell Oil Company in its motion for summary judgment were previously resolved by the court in favor of the plaintiff in denying the summary judgment motion of defendant Feed Specialties. The other arguments advanced by the defendants pose issues of fact, which would otherwise preclude summary judgment.